The Chief Justice
delivered the opinion of the court.
The appellants insist, in the first instance, that the decree against Remington, (which was final, and not merely interlocutory,) should he reversed because there was no prayer for subpoena against him in the bill. He was served by publication, being a non-resident of the State, and the final decree against him was entered in 1874, nearly four years before this appeal was taken. The appeal was only from the decree of August 36, 1878. Appeals can only be taken within two years after final decree.
It is further urged that the decree was madd without any *166 report of the master, and without notice to defendants. We notice, however, that the testimony to be used on the hearing, was taken under stipulation of parties before a person not appointed a master, and there was nothing referred to him or to a master upon which to report. As to notice of the time and place of hearing the chancellor certifies that due notice was given.
The right of complainant to file the bill in this case is denied by appellants, because he has established no t.ille to the real estate described; that the judge of probate had no power to order the sale of the real estate for the payment of debts until the personal estate was exhausted, and therefore his order to the administratrix to sell land was void, as it did not appear that the personal estate had been exhausted.
To this it may be said that the application for the license, or order to sell the lands, was made upon the ground that it was desired by the heirs for the purposes of distribution and the payment of debts — “for the payment of the heirs and creditors/’ as expressed in the petition. The application to the judge and his order were doubtless made in view of “an act empowering Judges of Probate to grant orders to executors and administrators to sell real estate for distribution,” approved December 10, 1862, Chapter 1358, Laws of 1862, which expressly granted jurisdiction to order a sale for distribution, and not under the provisions of the law of 1833, or 1841, found in Thompson’s Digest, 202, 203, referred to by appellants’ counsel. There is'no doubt that the Probate Court, "by the act of 1862, had jurisdiction of the subject-matter of the sale of real estate for distribution' among the heirs. There is no pretense that the regularity of the proceedings and sale have been .questioned by parties interested.
The judgments of Probate Courts, like the judgments of other courts of law, are final and conclusive ih matters over which they have jurisdiction. (Smith vs. Denson, Adm’r, 2 Sm. and Mar., 326, 339.) In that case the Court of-Errors and Appeals, Sparkey, C. J., says: “The court, it seems,, did make an order of sale. This it could not legally do without a citation. We must presume, in the absence of all showing to the contrary, that the court acted correctly. It is possible that the parties interested appeared without citation and thus dispensed with it.” In the case at bar, the petition recites that the heirs join in the application, and they afterwards acquiesced in it.
It appears that a deed was executed by Mrs. Standley, administratrix, after due notice, and that other deeds and releases were at the same time executed by the reputed heirs, assenting to and ratifying the sale, and under these deeds the complainant and his grantors have been in the quiet possession for over ten years before the actual entry of the judgment. Complainant is not here defending himself from an attack by heirs or legatees who had tno notice of the sale, or who were under disabilities; but, so far as this record shows, he has prima fade a sufficient legal title to enable him to maintain a suit of this character.
The suit is not, as assumed by counsel for appellees, brought to annul or to declare void a judgment, by a collateral proceeding, but it is to enjoin a sale of lands in which this complainant has a legal interest, under a judgment which, he says, is*not in law or in equity a ]ien upon them superior to his interest.
It does not appear that Remington, in whose favor the judgment against the estate of Standley is claimed to exist, is an actor in the proceedings sought to be enjoined. At least two suits were commenced in his name against the estate in 1862: one, in which Dawkins appears as attorney for Remington, declaring against Pyles and Standley as administrators de bonis non, and one in which Sanderson is attorney, declaring against Mrs. Standley, as administratrix of , the estate of James C. Standley, deceased. There is a third summons (alias) which we are unable to connect with either of the above mentioned suits. Then we find that the note described in the declaration filed by Dawkins, attorney, is payable January 1, 1860; the note declared on in the San-derson declaration is payable January 1, 1862; and the only original note among the papers on file in the Circuit Court is payable January 1, 1861. Each of these three notes bears the same date, is for the same amount, the same rate of interest, signed by the same makers, and all áre identical except as to the time of payment. There were two skeleton forms of judgment, by default and final, entered under date of October 13, 1863, one following the other, in the first of which the assessment of damages was entered at $8,405.21, but no amount was entered in the final judgment. Upon which of these notes the assessment was made by the clerk, if either of them, does not appear. Neither of the originals of the two first mentioned notes is among the files, and the third (the original) is not described in eihter declaration, and is therefore probably not the one upon which the damages were assessed. Upon one of the notes set out in the Dawkins declaration apperas an indorsement of payments which reduce the amount due October 13, 1863, the date of the assessment of damages, to about $4,875,38. instead of $8,405.21 as entered by the clerk. If there were in fact three notes, it is singular that the original of the one upon which the clerk assessed the damages is not among the files. If there was but one note, then there has been gross carelessness in copying the record. The fact that there was no’ judgment attempted to be entered (at least two suits having been commenced at different periods,) leads to the suspicion that there was but one note, upon which two attorneys, at different times, brought suit. If this was the fact, it begets another suspicion, that the assessment of the amount due was entered in the records in 1873 instead of 1863, because the amount due computed in 1873, (deducting the payments) was about the amount entered as assessed to be due in 1863, and the entry of the amount of $8,405.21, due as of 1863, was a gross fraud or a serious mistake.
These suggestions are offered for the consideration of the counsel of both parties.
The proof shows that there was no final judgment entered in October, 1863. In November, 1873, the attorney Hagan first appears and enters a motion in behalf of the plaintiff, that “judgment wane pro tunc be entered upon the assessment of damages made in the cause at the fall term, A. D., 1863, to-wit: the thirteenth day of October, A. D., 1883, upon which assessment of damages the clerk omitted to enter up judgment.” The clerk testifies that instead of entering the judgment nu/nc pi'o tunc under this motion, he, under the order of the court on that motion, filled up the blanks in the records of the court held in October, 1863, thus making it appear upon the face of that record that the final judgment had in fact been entered in 1863, ten years before the motion was made, while it is not shown that the court in 1863 had ordered, judgment to be entered.
It is apparent by this testimony, that at the time of the purchase of lands at the sale made by the administra-trix in December, 1863, this judgment was not, and was not in a proper condition to be docketed, as a lien upon the lands, and that the final judgment had not been entered or docketed until the purchaser and his grantee (complainant,) had “quietly possessed” the lands for the period of ten years under the administrator’s sale.
No explanation is given of the reason why the judgment was not perfected at an earlier- period, upon one or upon the three notes of large amount. Remington does nothing. The lands brought a large amount of money to the estate, *167 the personal estate was worth, as appears by the proofs, about forty thousand dollars, there were other moneys due in the form of credits, and but little indebtedness, yet the Remington claim is permitted to sleep, after suit brought and without final judgment, and no effort is made to collect it from the estate, until, after ten years of slumber, in August, 1873, the defendants, Wilson- and McHenry, attempt to ifbid in” this claim of oyer eight thousand dollars for the sum of ten dollars, upon’ a sale made under executions from a justice’s court. Tinder this supposed purchase Wilson and- McHenry have since assumed control of this large claim, have had a final judgment entered by an interpolation and alteration of the old records of the court, procured an execution to be issued after the records were so changed, and caused a levy to be made upon these lands.
We have not endeavored, or intended to pronounce the judgment void, as to Mrs. Standley. She is not a party to this suit. It will be a proper time to determine that question when she lays a foundation for it. Nor does the bill pray that the judgment be declared void, but only that, it s void as to the rights of the complainant.
We have seen that until November 21, 1873, the record did not show that any final judgment was entered or docketed, so as to become* a lien upon this land. (24 Maryland Rep., 538.) And we observe; further, that the court did not in 1873, upon the motion of Mr. Hagan, counsel for Remington, enter a judgment nunc pro tunc. No order to that effect appears, but the clerk testifies that, upon some order, he filled up the original skeleton form of the final judgment by inserting in it a sum of money. While it is common practice of the courts to order judgment to be entered nunc pro tunc, in furtherance of justice, such judgments will not affect third persons who have acquired rights. See Freeman on Judgments, sections 66, 68, 340,- and authorities cited.
It is insisted by complainant that the final judgment, as it now stands, is not a judgment against the administra-trix of J. C. Standley, deceased, as it appears only to be a judgment against “the defendant,” and who “the defendant” is, is only to be found in the entitling of the judgment, viz: “P. L. Standley, administratrix, &c.” and it does not appear therein of whose estate she was the “ad-ministratrix.” In view of our conclusion upon the other aspects of the case, it is not necessary to declare here the status of Mrs. Standley as to that entry.
Much of the foregoing discussion may not be, absolutely necessary to determine the rights of the defendants, Wilson and McHenry. They claim rights as purchasers of the Remington judgment, under executions from justice’s courts against Remington, by virtue of a levy under the latter upon the former. But first, we find that there was no final judgment at the time of the levy and sale to them; and second, a judgment is not the subject of levy and sale, under execution from a court of law. By the statute^ only “lands and tenements, goods and chattels,” are liable to be . taken in execution and sold. Thomp. Dig., 355.
dioses in action, as bills, bonds, notes, judgments, and the like, are not the subject of levy and sale under execution. I Cowen, N. Y., 240; 2 Blackf., Ind., 361; 23 Tex., 508; 4 Minn., 407; 23 Iowa, 104.
These defendants, therefore, acquired no title to the judgment, nor would they have had title if the judgment had been perfected at the time of the supposed levy and sale. All the proceedings had, and taken by them, or by their procurement under such supposed title, are of no avail, are unauthorized and void. They pretend to have no other right except under such sale, and they have no defensible standing before the court.
The decree of the Circuit Court must be affirmed.