Thalheimer Bros. v. Tischler, et al.—Syllabus.

HENRY THALHEIMER AND DAVID KLEIN, PARTNERS DO-
ING BUSINESS UNDER THE FIRM NAME AND STYLE
OF THALHEIMER BROTHERS, *Appellants,* v. PHILIP
TISCHLER, FREDA K. ROBINSON AND O. K. ROBIN-
SON, HER HUSBAND, THE J. R. TYSEN COMPANY,
A CORPORATION, WILLOUGHBY ADAMS, CHARLES
W. RICHARDSON AND CHARLES E. SMITH, PART-
NERS UNDER THE FIRM NAME AND STYLE OF
ADAMS & RICHARDSON, STEPHEN H. MELTON,
HALSTEAD E. BOWDEN, JOHN C. L'ENGLE, THOMAS
V. PORTER, THE FLORIDA HARDWARE COMPANY,
A CORPORATION, JOHN PRICE, AS SHERIFF AND EX-
OFFICIO ADMINISTRATOR OF THE ESTATE OF WIL-
LIAM M. LEDWITH, DECEASED, WILLIAM GREER
AND SAMUEL FLYNN, PARTNERS DOING BUSINESS
UNDER THE FIRM NAME AND STYLE OF GREER &
FLYNN, R. CLIFTON COOLEY, DEXTER HUNTER,
ISAAC BING AND SAMUEL BING, PARTNERS DOING
BUSINESS AS I. & S. BING, THE CONNORSVILLE
FURNITURE MANUFACTURING COMPANY, A COR-
PORATION, THE ALABAMA COAL COMPANY, A COR-
PORATION, RITZA M. PETERS, WELDA SHAW AND
ARNOLD M. SHAW, HER HUSBAND, CHARLES KEIS-
WETTER, EDWARD R. ROCKWELL, FORMERLY DOING
BUSINESS AS THE FLORIDA STONE & PIPE COM-
PANY, SAMUEL P. SMITH, THE UNITED STATES
NET & TWINE COMPANY, A CORPORATION, THE
AMERICAN NET AND TWINE COMPANY, A CORPORA-
TION, AND COLUMBUS SHIPLEY, CHARLES F. BENT-
LEY AND EDWARD D. HALBERT, PARTNERS DOING
BUSINESS AS SHIPLEY, BENTLEY & COMPANY, AND
A. T. FRENCH, *Appellees.*

1. An equitable asset of a debtor can be reached only by proper
   proceedings in a court of equity and is not subject to levy and

sale under an execution at law issued upon a judgment recovered against such debtor or upon a deficiency decree rendered against him in a suit for the foreclosure of a mortgage, and where such levies and sales are made and deeds executed by the sheriff they are all nullities and vest no title in the purchasers.

2. A lease for a term of years of real estate, wherein the lessee is given the option at any time after the expiration of a certain fixed period therein to purchase the leased property for a certain stipulated price, and such lessee, in the event he failed to exercise such option to purchase, is given therein the right, at the expiration of the term, to be paid one-half of the valuation of the improvements he had placed on the leased premises as fixed by three disinterested persons, does not give the lessee such an interest in the leased premises as can be subjected to sale under an execution at law. This contemporaneous intermixture and mingling of legal and equitable interests creates an amalgam that can only be properly disposed of and sold under a decree in equity.

3. One who lends money to another for the purpose of erecting a building on a lot upon the faith of a verbal agreement based upon the prior assignment of a lease combined with an option to purchase has an equity against such debtor for the amount of money so advanced or loaned superior to that of after acquired judgments, or deficiency decrees in a mortgage foreclosure against him, or to the equity, if any, of a volunteer purchaser at an illegal execution sale of the debtor's interest in the property, even though the judgments against such debtor on which the executions issued may have been recovered prior to the lending of the money to him by such creditor.

This case was decided by Division A.

Appeal from the Circuit Court of Duval County.

## Statement.

On the 16th day of January, 1906, the appellants as complainants filed their bill in chancery in the circuit court for Duval county against all the appellees as de-

fendants, with the exception of the appellee A. T. French, who was made a defendant by a supplemental bill filed by the appellants on the 20th day of September, 1906, for the purpose of foreclosing certain liens in favor of the appellants created by the defendant, Philip Tischler upon certain described properties.

The pleadings, exhibits, evidence, master's report, exceptions thereto, final decree and the proceedings generally are quite voluminous, comprising 325 typewritten pages.    In view of the conclusion which we have reached and also by reason of the fact that there is no serious dispute among the respective parties as to the facts and the points of law growing out of the various complicated transactions are clearly and succinctly presented to us for determination, no extended statement of the pleadings and evidence is necessary.    The bill sought the foreclosure of a lien against a certain described parcel of land commonly known as the "Henderson lot" or the "Placide lot" by reason of the fact that the Placide Hotel was constructed thereon, and also sought the foreclosure of a lien against two other pieces of property known respectively as the "Bailey property" and the "Honeymoon" or "Ward property."    The rights of the respective parties with reference to the last two pieces of property was satisfactorily settled by the court below in the decree rendered to the effect that the complainants had a lien thereon for the sum of $15,203.12, which portion of the decree is conceded to be correct by all parties, so no further reference need be made thereto.    So far as this court is concerned, the litigation is confined to the Henderson lot.    The court below decreed that the complainants had a lien thereon for the sum of $10,278.86, the amount found to be due for moneys advanced by the complainants to Philip Tischler in the years 1891 and 1892, but refused to decree a lien

thereon for the further sum of $6,269.80, the amount found to be due from Tischler to the complainants for moneys advanced in the years 1901 and 1902. The court further found and decreed that the defendants, Freda K. Robinson and O. K. Robinson, her husband, were the owners and assigns of all the estate, right, title and interest which the defendant Philip Tischler, had in and to the Henderson lot on the 15th day of November, 1905, or at any time thereafter up to and including the date of the sheriff's sale to them of said property, to which we shall have occasion to refer hereinafter, subject only to the lien of the complainants thereon for the sum of $10,278.85, together with interest thereon from the 8th day of August, 1907, at the rate of eight per cent. per annum, for principal and interest, and the further sum of $750.00 for attorney's fees, and the proportion of costs of suit which was fixed by the decree, and that, with the exception of such lien of the complainants, the Robinsons were entitled to such property, free and clear of any interest and all other claims or liens of any and all of the parties to the suit. The Robinsons seek to maintain the decree as it stands, while the complainants seek a reversal because of the claim of the Robinsons having been adjudicated to be superior to the lien of the complainants for the additional sum of $6,269.80, and the defendant, A. T. French, who has assigned cross-errors, also seeks a reversal of the decree, claiming that his title to the property in dispute is superior to that of the Robinsons and that he is entitled therto or the proceeds arising from the sale thereof under the decree, subject only to the lien of the complainants for the sum of $10,278.86, together with the attorney's fees and costs as fixed by the decree. As we understand from the briefs and oral arguments of the complainants, the Robinsons and French, who are the only parties contending before this court, it is conceded by all of

them that the decree is correct in so far as it finds that the complainants have a first lien on the property for the sum of $10,278.86.   Both the complainants and French filed exceptions to the master's report, all of which were overruled by the court, which rulings are respectively assigned as error, and errors are also assigned by both the complainants and French upon the final decree, but we deem it unnecessary to copy the assignments of error or to discuss them in detail.   The points presented for our determination seem to resolve themselves into the following: First, are the complainants entitled to a lien on the property for the additional sum as claimed by them of $6,269.80, and, if so, is such lien superior to the claims, liens or titles of the Robinsons or French?   Second, are the Robinsons entitled to what was awarded them in the decree?   Third, is the claim of French superior to that of the Robinsons and subordinate only to the claim of the complainants for the sum of $10,278.86?   The answering of these questions is the task which confronts us.   In order to do this we shall have to ascertain and set forth the bases of the claims of these three contending parties to the property in dispute.   This we shall now proceed to do.

Prior to the 25th day of June, 1889, the defendant, Philip Tischler, was the owner of the south sixty feet of lot eight in block thirty-two, old numbers, of the city of Jacksonville, and on that date Elizabeth A. Henderson and Philip Tischler made and executed a certain instrument in writing, which is as follows:

"This indenture, made this 25th day of June, A. D. 1889, between Elizabeth A. Henderson of the City of Jacksonville, Duval county, Florida, party of the first part, and Philip Tischler of the same city, county and state, party of the second part:

Witnesseth, That the said party of the first part hath letten and by these presents doth grant, demise and to

farm let unto the said party of the second part, his executors, administrators and assigns all that lot, piece or parcel of land, situate, lying and being in the city of Jacksonville, Duval county, Florida, and more particularly described as follows, to-wit: Commencing at the northeast corner of lot eight (8) in block eighty (80) new numbering, according to the map of the City of Jacksonville, and running south along the western line of Pine street forty-five (45) feet; thence west one hundred and five (105) feet, thence north forty-five (45) feet; thence east one hundred and five (105) feet to the place of beginning the said described property being the north forty-five (45) feet of said lot eight (8) in block eighty (80) of the new numbering of the City of Jacksonville, and block thirty-two old numbering.

With the appurtenances for the term of twenty-five years from the first day of October, A. D. 1889, at the yearly rental of four hundred dollars ($400.00) to be paid in equal quarterly payments.

And the said party of the second part doth covenant to pay to the said party of the first part the said yearly rental as herein specified, namely in quarter yearly payments on the first day of January, the first day of April, the first day of July, and the first day of October, in each and every year and at the expiration of said term the said party of the second part will quit and surrender the premises hereby demised.

And the said party of the first part, her heirs, executors, administrators and assigns doth covenant that the said party of the second part on paying the said yearly rent and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid.

And it is further covenanted and agreed that if the

party of the second part, his executors or assigns shall at any time after the expiration of five years from the date hereof pay to the party of the first part, her executors, administrators or assigns the sum of seven thousand five hundred dollars ($7,500.00) and all rent accrued to that time that the said party of the first part will convey the said premises by a deed with apt and proper words unto the party of the second part, his executors, administrators or assigns, or to such person or persons as he or they shall direct in fee simple, free from encumbrances, liens or claims of every kind and character whatsoever. And it is further agreed that the party of the second part, his executors, administrators or assigns will pay all taxes that shall or may be legally assessed against the property hereinbefore described.

It is further covenanted and agreed by and between the parties hereto that at the expiration of twenty-five years from the date hereof, if the party of the second part should not purchase and pay for said property as hereinbefore provided that the value of the buildings and other improvements placed or erected on said lot by said party of the second part shall be fixed by three disinterested parties, one to be selected by each party hereto and the third to be selected by the parties so chosen and one half of the valuation that shall be so fixed by said parties shall be paid by the said Elizabeth A. Henderson, her heirs, executors, administrators, or assigns to the said Philip Tischler, his heirs, executors, administrators or assigns and the improvements be and become upon such payment the property of said Elizabeth A. Henderson.

In witness whereof, we have hereunto set our hands and seals, this 25th day of June, A. D. 1889.
Signed, sealed and delivered
in presence of:                    E. A. HENDERSON, (Seal.)
JOHN E. HARTRIDGE,          PHILIP TISCHLER. (Seal.)
R. M. CALL."

The property described therein is what is known as the "Henderson lot" and constitutes the bone of contention. The part already owned by Tischler and that described in the foregoing instrument constituted the whole of lot eight. Prior to this time Tischler had borrowed from the complainants the sum of $21,000.00 and had executed to them a mortgage upon that portion of the lot owned by him to secure the same, with which money he had constructed a building upon that portion of the lot which he owned. In August, 1891, this building was destroyed by fire and Tischler thereafter began the erection of a new building covering the entire lot. The building which was so destroyed was insured for $20,000.00, and, after expending this money in rebuilding, Tischler applied to the complainants to furnish him sufficient money with which to complete such building, which the complainants agreed to advance to him, and for the purpose of securing such advances Tischler transferred and assigned to the complainants, on the first day of October, 1891, the lease made to him by Elizabeth A. Henderson, which we copied in full above, and such assignment was recorded in the public records of Duval county on the same day of its execution. After the date of such assignment and prior to the 15th day of July, 1892, the complainants advanced to Tischler the sum of $7,500.00, on which date Tischler executed his promissory note for said amount to the complainants, payable three years after date , with interest at six per cent. per annum, with which money Tischler completed such building. On the 27th day of July, 1892, Tischler executed a mortgage to the complainants on the lot described in such lease to secure his note given on the 15th day of July, 1892, for $7,500.00, such mortgage being given because the parties thereto thought that the lease and assignment covered the land but did not

embrace the building which had been erected thereon. The building so erected upon this lot was destroyed by the historic fire in the city of Jacksonville on the 3rd day of May, 1901, and $4,000.00 of the insurance thereon was credited upon the amount due the complainants for the money so advanced by them. In the fall of 1901, Tischler, desiring to rebuilding upon the Henderson lot, applied to the complainants for another loan of money for that purpose. As is stated by the complainants, who are appellants here: "The Henderson lease and the assignment by Tischler to appellants having been delivered to the appellants at the time the assignment was executed and the same being in their possession and being held by them as securety for the amount then due on account of the moneys advanced in 1891 and 1892, it was agreed by and between Tischler and the appellants that they would again advance him money with which to build a building upon the Henderson lot, and that they should hold said lease and the assignment thereof as securety for the said advances until the same should be repaid to them with interest at six per cent. Relying upon this agreement and the fact that they had an absolute assignment of the Henderson lease in their possession as security for their advances, the appellants advanced to the appellee Philip Tischler, between August, 1901, and July, 1902, the sum of seventy-three hundred and sixty nine and 77-100 dollars ($7,369.77), all of which money, and more, was expended by the said Tischler in rebuilding upon the said Henderson lot. There is still due on account of advances so made the sum of sixty-two hundred and sixty-nine and 80-100 dollars (6,269.80)."

In March, 1901, the Robinsons, two of the appellees, filed their bill in the circuit court of Duval county against Tischler to foreclose a mortgage executed by him for

$10,000.00 on that portion of lot eight owned by him as
well as on certain other property, and the complainants
were made parties defendant in that suit and filed a cross-
bill therein to foreclosure their mortgage for $21,000.00.
This suit resulted in a deficiency decree being entered in
favor of the Robinsons against Tischler for $18,262.18,
upon which deficiency decree an execution was issued on
the 15th day of November, 1905, and levied the same
day by the sheriff upon "all the estate, right, title and
interest" of Tischler of, in and to the Henderson lot, as
well as certain other property. All of the property so
levied upon was sold by the sheriff at public auction on
the first day of January, 1906, and struck off to the
Robinsons for the sum of $3,000.00, to whom the sheriff
executed a deed on the same day. No money was paid by
the Robinsons to the sheriff on account of this bid, but
was simply credited on their execution.

Several of Tischler's creditors had rocevored judg-
ments against him in the circuit court for Duval county,
among others, I. & S. Bing, on the 7th day of March
1892, for $375.51, damages, and $3.00, costs, upon
which execution issued on the 17th day of March, 1892,
and the Connorsville Furniture Manufacturing Company,
a corporation, on the 7th day of December, 1891, for
$209.83, damages, and $4.70, costs, upon which execution
issued on the 28th day of January, 1892. These two
executions came into the hands of the sheriff of Duval
county on the 17th day of March, 1892, and the 28th
day of January, 1892, respectively, and were levied by
him on the respective dates of the 25th day of June, 1906,
and the 8th day of April, 1906, upon the Henderson lot
and other parcels of land as the property of Tischler, all
of which was sold by the sheriff at public auction on the
6th day of August, 1906, and struck off to A. T. French
for the sum of $750.00, to whom the sheriff executed a
deed on the 10th day of August, 1906.

We believe that these constitute all the facts which are essential to an intelligent understanding of the opinion.

*Axtell & Rinehart* and *J. E. Hartridge,* for appellants;

*Bisbee & Bedell* and *Bryan & Bryan,* for appellees.

SHACKLEFORD, C. J., (*after stating the facts.*)

The first point we shall take up for consideration and determination is whether Tischler's interest in the Henderson lot was legal or equitable in its nature. If we should find that it was an equitable asset, then it was not subject to sale under an execution and neither the Robinsons nor French acquired any title by their respective deeds from the sheriff. See Wilson v. Matheson, 17 Fla. 630, text 642; Robinson v. Springfield Co., 21 Fla. 203; Richardson v. Gilbert, 21 Fla. 544, text 546; Zehnbar v. Spillman, 25 Fla. 591, text 598, 6 South. Rep. 214, text 217; Neubert v. Massman, 37 Fla. 91, 19 South. Rep. 625; Mayer Bros. v. Wilkins, 37 Fla. 244, text 255, 19 South. Rep. 632, text 635; Macfarlane v. Dorsey, 49 Fla. 341, text 347, 38 South. Rep. 512, text 514. Should we reach this conclusion it would become futile and unnecessary to determine the question of priority between the Robinsons and French. In fact, such question would not be before us on this appeal. Whatever their respective rights might be, or what claim or interest, if any, they have or might acquire in Tischler's interest in such lot or in the residue of the proceeds arising from the sale thereof, after the payment therefrom of the sum of $10,278.85, together with interest, attorney's fees and costs, to the complainants, as fixed by the decree

and as to which there is no dispute, would be a matter to be settled by appropriate proceedings in equity.

What interest did Tischler acquire in the lot under and by virtue of the instrument which he and Elizabeth A. Henderson jointly executed on the 25th day of June, 1889, and which we have copied in full in the statement preceding this opinion? In some of the pleadings, as well as in the briefs of counsel, this instrument has been referred to as a lease. Strictly speaking, this term does not fully describe it, and it was used doubtless for the sake of convenience. An examination thereof discloses that by such instrument Tischler leased such lot for the term of twenty-five years from the first day of October, 1889, at the yearly rental of $400.00, to be paid in equal quarterly payments, and also acquired the right and privilege of purchasing the lot at any time, after the expiration of five years from the date of the instrument, upon the payment of the sum of $7,500.00, and all rent which had accrued up to the time of such purchase. Tischler was also to pay all the taxes that might be assessed against the property. It was further stipulated that, at the expiration of the term named, if Tischler failed to purchase the lot, the value of the buildings and other improvements which he had placed thereon should be fixed by three disinterested parties, one-half of which valuation Elizabeth A. Henderson was to pay Tischler and thereby acquire the title to all the improvements.

The master found Tischler's interest to be a chattel real and that a lien thereon was created by the issuance of an execution, not by the entry of a judgment. This might be true if the equities did not so commingle with the legal estate as to be inseparable therefrom or if the equities were postponed until the termination of the legal estate for years. The contract will not bear that construction. The execution sale could convey only the certain

unexpired term of years which the lease feature of the contract has yet to run; this however is subject to be defeated at any moment by the exercise of the option, the assertion of the equity by Tischler or some one in his behalf, thereby destroying that certainty as to terms, so essential to chattels real. This contemporaneous intermixture and mingling of legal and equitable interests creates an amalgam that can only be properly disposed of and sold under a decree in equity. As is said in 17 Cyc. 953, "at common law, a leasehold interest in lands, no matter for what term of years, was a chattel, and in the absence of a statute to the contrary may be levied upon and sold as personal property." Also see authorities there cited, as well as text and authorities cited on page 954. We have no statute in this state changing the common law rule in this respect, and we have no doubt that if Tischler's interest in the lot was a leasehold interest only it was subject to sale under an execution. See section 1618 of the general statutes of 1906. But, as we have seen and as the master properly found, Tischler had not only a leasehold interest in the lot for a term of years but also an option to purchase, at any time after the expiration of five years from the date of the lease, and, in the event he failed to exercise this option, at the expiration of the term he had a further claim or right to be paid one-half of the valuation of the improvements he had placed on the lot as fixed by three disinterested persons. Did this option to purchase and the right to one-half of the valuation of the improvements give Tischler such an equitable interest in the lot, which was so connected with his leasehold interest as to be inseparable therefrom, as to prevent the levy of an execution thereon and its sale thereunder? It seems to us that this question must be answered in the affirmative. If Tischler had exercised his option to purchase, or if he should do so at any time before the expiration of the term, and Hender-

son refused to execute a conveyance to the lot upon Tischler's compliance with all the requirements of the instrument as to the payment of the amount of the purchase money agreed upon and all accrued rent, his remedy would be in a court of equity, not in a court of law. In other words, he has an equitable interest which he could enforce in a court of equity. See the reasoning in Holbrook v. Betton, 5 Fla. 99, which, although not conclusive upon the point in question because not dealing directly with it, tends to that goal. So to the same effect is Insurance Company of North America v. Erickson, 50 Fla. 419, 39 South. Rep. 495, S. C. 2 L. R. A. (N.S.) 512, 111 Amer. St. Rep. 121, 7 Amer. & Eng. Ann. Cas. 495. This being true, neither the Robinsons nor French took anything by their sheriff's deeds. Macfarlane v. Dorsey, *supra.*

The next question we shall consider is were the complainants entitled to a lien upon Tischler's interest in the lot for the additional sum of $6,269.80 found to be due from Tischler to the complainants? The answer to this has been foreshadowed by the conclusion which we have already reached and announced in disposing of the other questions. As we have seen French as a volunteer purchaser at an illegal execution sale took no title to and acquired no equity in the property involved; for like reasons, the Robinsons acquired no title to or interest in such property under and by virtue of their execution sale based upon their deficiency decree. It seems to us that the complainants have an equitable lien or mortgage upon such property by virtue of the verbal agreement based upon the prior assignment of the lease, combined with an option to purchase, to secure the sum of $6,269.80, found to be due to them from Tischler for money advanced by them to him upon the security of such assignment, and that such equitable lien or mortgage is long prior in point of time to any rights or equities the Rob-

insons may have by reason of the deficiency decree and is superior to any equity that the Robinsons may have in or to such property.

Therefore, the question propounded must be answered in the affirmative. It follows that the decree must be reversed and that the complainants be decreed to have a first lien upon the property in question not only for the sum of $10,278.85 for principal and interest and $750.00 as a solicitor's or attorney's fee, but also for the additional sum of $6,269.80 and such additional solicitor's fee as may be determined by the court from the testimony, and the cause is remanded, with directions for a modification of the decree in accordance with this opinion. The costs of this appeal are to be taxed against the Robinsons and French.

COCKRELL and WHITFIELD, JJ., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.