In the Matter of ASSOCIATED AIR SERVICES, INC., Debtor.

ASSOCIATED AIR SERVICES, INC., Plaintiff,

v.

W.J.C., INC., a Florida corporation, Defendant.

Bankruptcy No. 83–02275–BKC–JAG.

Adv. No. 84–0119–BKC–JAG–A.

United States Bankruptcy Court, S.D. Florida.

June 12, 1984.

Robert M. Leen, Hollywood, Fla., Mark Schreiber, Fort Lauderdale, Fla., for defendant.

Joe Easthope, Fort Lauderdale, Fla., for debtor/plaintiff.

## PRELIMINARY FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

THIS MATTER was tried on the Debtor's Complaint for Declaratory Judgment regarding the nature of the agreement between the Debtor, ASSOCIATED AIR SERVICES, INC., and W.J.C., INC. The issue before this Court is whether the parties entered into an assignment of a Hollywood-Fort Lauderdale Airport lease, or whether their agreement was only for a sublease. The Court concludes that the transaction is an assignment.

W.J.C., INC. had obtained the underlying lease in question (Defendant's Exhibit "A") through assignment from a prior tenant (Defendant's Exhibit "B"). The controlling document between ASSOCIATED AIR and W.J.C. is entitled "Sublease-Purchase Agreement" (Plaintiff's Exhibit No. "1"). It contains terminology regarding both lease and assignment. The parties also executed a document entitled "Sub-lease Agreement", and there is a Consent to Sub-lease given by Broward County (both contained in Plaintiff's Exhibit No. "2").

Both agreements provide for monthly payments by ASSOCIATED AIR, and at first glance it appears that the agreement was for a sublease. However, ASSOCIATED AIR argues that the transaction was an assignment with financing considerations (a secured transaction) even though couched in terms of a sublease. The "Sublease-Purchase Agreement" is thus the document which contains the entire intentions of the parties, and the Sub-Lease Agree-

ment" was a part of the execution of those intentions.

W.J.C., INC. based its argument (in favor of a lease characterization) entirely on an interpretation of the agreement, without citing any law. ASSOCIATED AIR argued that this matter should be analogized to the Uniform Commercial Code cases which deal with the process of distinguishing a true lease from a transaction entitled a lease, but which is in reality an installment sale and a secured transaction. Upon further consideration and its own research, this Court has concluded that the Florida UCC is not only analagous but is probably the law to be applied to a secured transaction in which a real property lease is the collateral, and this Court finds that the transaction in question in this case is an assignment, a secured transaction, based both on the legal presumption expressed in the UCC and on the terms of the agreement standing by themselves.

■ The property being transferred through the agreement in this case is a lease of real property. Either the lease is being leased (a sublease) or it is being conveyed through an installment sale, subject to the security interest of W.J.C. INC. (assignment of lease). The UCC only applies if the transaction involves personal property rather than real property, and it (Article 9) only applies if the transaction is a secured transaction rather than a true lease. Both of those points are at issue in this case, and neither is truly the "first" issue. However, turning to the personal versus real property question, the Court is inclined to conclude that the Florida UCC applies to this transaction based on *Gould, Inc. v. Hydro-Ski International Corp.,* 287 So.2d 115 (Fla.App.1974).

Without precedential Florida case law, this Court would conclude that the transaction in question is too closely related to real property to be governed by the UCC, based on the provisions of the UCC itself. See Note, *An Article Nine Problem—Mortgages, Leases, and Rents as Collateral,* 47 U.Colo.L.Rev. 449 (1976). The scope provision of Article 9 would seem to initially include the transaction (§ 679.102, Fla. Stats.):

(1) Except as otherwise provided in s. 679.104 on excluded transactions, this chapter applies:

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or account; ...

(2) The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply.

However, § 679.104 provides:

This chapter does not apply:

. . . .

(10) Except to the extent that provision is made for fixtures in § 679.313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder. . . .

Although there is a disagreement about the policy behind it, most cases and commentators have concluded that § 9–104 leads to the result that a lien or security interest having a real estate lease as collateral is not governed by the UCC. E.g., *In re Bristol Associates,* 505 F.2d 1056 (3d Cir. 1974).

It appears that under Florida law the UCC does govern this type of transaction. However, the Court does not make a final determination in that regard at this time. In *Gould* the lender obtained a security agreement which covered, among other things, Hydro-Ski's contract rights and general intangibles. The question before the Fourth District Court of Appeal was whether or not Hydro-Ski's lease in certain real property was included under the security agreement, and the Court held that it was. The applicability of the UCC was not specifically addressed, but the conclusion of applicability is essential to the reasoning of the opinion, and the other items of collateral under the security agreement were

clearly subject to the UCC.* A bankruptcy case, *In re Boogaart of Florida, Inc.*, 17 B.R. 480 (Bkcy.Ct.S.D.Fla.1981), interprets *Gould* as holding that the Florida UCC applies to security interests in real property leases. Following these cases, this Court concludes that the UCC applies to the transaction here.

■ Turning to the issue of whether or not this is a true lease, upon careful examination of the "Sublease-Purchase Agreement" it does appear that W.J.C. INC. *was* assigning the lease, although also attempting to retain sufficient control of it, through the sublease form, in order to protect itself.

Many provisions in the agreement are compatible with either a lease or an assignment interpretation. ASSOCIATED AIR paid substantial amounts of money upon execution of the Sublease-Purchase Agreement, and six (6) months and one (1) year after execution, in addition to the monthly payments to W.J.C. INC. and the basic rental payments to Broward County. However, this alone is not dispositive, as substantial premiums are frequently paid to obtain valuable subleases, even where no assignment is intended. A very small part of the leased premises were preserved for W.J.C. INC.'s use throughout the term of the lease, but, again, it is possible to assign less than the full leased premises.

ASSOCIATED AIR essentially assumes all obligations of a tenant, including taxes, utility charges, cost of maintenance and improvements, insurance, etc. ASSOCIATED AIR also obtains the exclusive right of possession except for the small reserved area, and other rights consistent with ownership such as the right to rent or sublease any facilities without the approval of W.J.C. INC. There are many provisions for the protection of W.J.C. INC. which would be consistent either with a capacity as landlord or as a secured creditor.

The basic lease contains an option to extend the lease for a ten (10) year period commencing in 1986. The Sublease-Purchase Agreement covers the extended term of the lease, and provides that W.J.C. INC. will exercise the option, but that ASSOCIATED AIR has the right to do so if W.J.C. INC. fails to exercise it.

Despite the conflicting provisions in the agreement, this Court finds that the underlying intention of W.J.C. INC. was to assign the lease. Paragraph 31 provides:

31. *Parties* (sic) *Intention:* It is expressly agreed by the parties to this Agreement that the intent of entering this Agreement is to effect an assignment of the Basic Lease to Associated Air on a certain future date and at the same time assure that the interest which W.J.C. presently holds in the premises is in no way lost by the default of Associated Air under this Agreement or by any default under the Basic Lease....

Despite the reference to an assignment on a future date, the agreement contains a present assignment in Paragraph 7:

Provided that Associated Air is not in default of this Agreement, the Basic Lease or the Sublease, W.J.C. *hereby* unconditionally *assigns* the entire premises (including the area reserved for use by W.J.C.) one (1) year prior to the expiration of the Basic Lease as extended by the ten (10) year option.... (Emphasis Supplied)

Also under Paragraph 7, ASSOCIATED AIR is to pay W.J.C. INC. One and 00/100 ($1.00) Dollar at the end of the term of the agreement. Equally significant, ASSOCIATED AIR has the right to prepay the balance remaining under the agreement and obtain the assignment immediately upon such prepayment. Finally, the financing nature of the transaction is revealed in a section entitled "Security Agreement" (Paragraph 27) which provides

---

* The Court could have found that the security interest applied to the lease, while also finding that it was a transaction excluded from the application of the UCC under § 679.104(10), but there was no such discussion. It is arguable that the Court didn't have to reach the point. The issue was between the secured creditor and debtor and therefore did not involve perfection issues where the difference between UCC and non-UCC law would be most defined.

that the basic lease "is given as security for the faithful performance for all of the covenants of this Agreement and the Sublease and Assignment to Associated Air."

Having tentatively concluded that this case is not excluded from UCC coverage by virtue of its connection with real estate, we turn to what the UCC says about leases. In the definitional section under the definition of "security interest" § 671,201(37), the statute provides:

> ... Unless a lease or consignment is intended as security, reservation of title thereunder is not a security interest .... Whether a lease is intended as security is to be determined by the facts of each case; however, ... (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration *does make* the lease one intended for security. (Emphasis Supplied)

The facts of the case at bar fit precisely within subsection (b). Since ASSOCIATED AIR is to pay One and 00/100 ($1.00) Dollar and receive an assignment of the lease at the end of the term of the agreement, it would seem that § 671.201(37) mandates a finding (or conclusion of law) that it is a lease intended for security and therefore W.J.C. INC. has only a security interest.

This interpretation of the UCC provision does not do violence to an interpretation of the agreement as a whole. Even if this matter were not governed by the UCC, the cases and comments under the UCC would be helpful in analyzing the factors which determine whether a transaction is a true lease or not. Because of the frequency of their use, many authors have written on the subject of equipment leases. See, e.g., Coogan, *the ABC's of Leasing and the UCC;* Coogan, *Is There a Difference Between A Long-Term Lease and an Installment Sale of Personal Property?;* and Coogan and Boss, *Uniform Commercial Code Treatment for All Leases,* all in 1 Bender's UCC Serv. (P. Coogan, W. Hogan, D. Vagts and J. McDonnell ed. 1984) and

Mooney, *True Lease or Lease "Intended as Security"—Treatment By the Courts* in 1C Bender's UCC Serv. 2915 (P. Coogan, W. Hogan, D. Vagts and J. McDonnell ed. 1984). A summary of the differences between true leases and installment sales with security agreements is provided in Coogan, *Leases of Equipment and Some Other Unconventional Security Devices: An Analysis of UCC Section 1–201(37) and Article 9* in 1 Bender's UCC Serv. (P. Coogan, W. Hogan, D. Vagts and J. McDonnell ed 1984):

> The use by the lessee of the equipment for a term less than its useful life and the obligation to return it to the lessor while it still has value are the distinguishing characteristics of a lease, just as an obligation to pay the full purchase price and so acquire substantially all the benefits and risks of being the owner are the distinguishing characteristics of a sale.

The identification of these distinguishing characteristics leads to several separable factors which courts have found significant in identifying the nature of specific transactions. In particular, they have tended to find that the transaction is actually a sale when the total amount which the "lessee" will pay is approximately equal to the price for which the leased property could be purchased; when the lease term is for almost the entire useful life of the leased property; and when there is an option to purchase for nominal consideration at the end of the lease term. When these factors are present the transaction is the functional equivalent of a sale, and should be treated as one from its inception, particularly because much of Article 9 is for the purpose of protecting third parties, and a secured creditor should not be permitted to avoid those provisions simply by using different terminology.

In the case at bar, even though there was no evidence of the market value of the lease, and such value might be very difficult to determine, the lease was to be assigned for essentially no consideration at the end of the term of the agreement, indicating that W.J.C. INC. felt that it

would have obtained the full value to it by that time. As far as the useful life of the property goes, the term of the agreement between ASSOCIATED AIR and W.J.C. INC. is a year *less* than the term of the basic lease (including option period), so there is obviously no useful life remaining from which the "lessor" can obtain value. This factor is the one focused upon by the Florida Supreme Court in the case of *C.N. H.F. v. Eagle Crest Development Co.*, 128 So. 844 (Fla.1930) in which the court concluded that if the entire lease (entire in terms of duration, not necessarily physical location) is transferred to another, the transaction is an assignment, not a sublease, despite the use of lease terminology and the reservation of rights as a landlord. (Although that holding in the case is precisely on point, the litigation was between the owner of the real property [the original lessor] and the sub-lessee/assignee of the lease, and the issue was one of privity between those parties and assumption by the sub-lessee/assignee.)

One final issue which the Court has considered is whether the clause of the basic lease which requires approval of an assignment by the property owner (Broward County) prevents the interpretation of the agreement as an assignment by this Court. *Gould* and *Great Southern Aircraft Corp. v. Kraus*, 132 So.2d 608 (Fla.App.1961), a case involving the giving of a Dade County airport leasehold interest as security, hold that such an assignment is not ineffective between the assignor and assignee, whatever the effect of that assignment on the underlying lease.

Regarding the issue of perfection, because the subject of perfection under the UCC was not dealt with at the hearing on this matter, the Court would prefer additional argument and, if necessary, proof on that issue. It appears that the collateral here would be classified as a general intangible, but the Court has not drawn a final conclusion on that issue.

THEREFORE, a hearing will be set to hear argument and take evidence on the issues of the applicability of the UCC to this transaction and to the issue of perfection of the secured transaction.