**In re AIR FLORIDA SYSTEM, INC., Debtor.**

**In re AIR FLORIDA, INC., Debtor.**

**AIR FLORIDA SYSTEM, INC. and Air Florida, Inc., Plaintiffs,**

**v.**

**TRANSWORLD AIRLINES, INC., Defendant.**

**Bankruptcy Nos. 84–01223–BKC–SMW, 84–01224–BKC–SMW.**
**Adv. No. 84–0690–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

March 18, 1985.

Robert M. Quinn, Tampa, Fla., for Air Florida.

Stanley Arthur Beiley, Miami, Fla., for Transworld Airlines, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause came on to be heard on the complaint of Air Florida System, Inc. and Air Florida, Inc. ("Air Florida") to avoid a lien, to partition and sell property, and to avoid and recover preferences, and was heard by the Court on January 8, 1985. The Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the argu- ments of counsel, and being otherwise fully advised, does hereby make the following findings of fact and conclusions of law:

This dispute involves the respective rights of the parties in a portion of an airport terminal building (the "Concourse Addition") which was constructed by de- fendant Transworld Airlines, Inc. ("TWA") on land TWA leased in the Fort Lauder- dale/Hollywood International Airport (the "Airport") from Broward County, Florida (the "County"). The disputed portion of the Concourse Addition is referred to as the Air Florida Facility. The basic dispute is whether TWA leased or sold its rights in the Air Florida Facility and an attached loading bridge to Air Florida, and, if the transaction was a sale, whether TWA has a perfected security interest in the rights transferred, as well as two loading bridges now attached to the Air Florida Facility.

The testimony established that TWA built the Concourse Addition on ground space it leased at the Airport pursuant to the terms of an Interim Agreement and Interim Lease with the County. The Inter-. im Agreement and Lease provided that TWA could occupy the Concourse Addition until such time as the County completed construction of a new terminal facility at the Airport, at which time the Interim Lease would end. When the Interim lease ended TWA would lease space in the new terminal facility, and the Concourse Addi- tion would revert to and become the prop- erty of the County.

After TWA built the Concourse Addition, TWA and Air Florida negotiated the trans- fer of TWA's rights in the Air Florida Facility and an attached loading bridge to Air Florida. The parties executed an Agreement, setting forth the terms of the transaction on September 15, 1980 (the "Agreement"). The parties closed the transaction contemplated by the Agree- ment on November 10, 1980. At the clos- ing the parties executed several doc- uments, copies of which were admitted into evidence without objection. The closing

documents include a letter agreement dated November 10, 1980, (the "Sublease"), a bill of sale (the "Bill of Sale") a chattel mortgage and security agreement (the "Chattel Mortgage") and a financing statement (the "Financing Statement"). Also, at the closing, Air Florida paid TWA $875,000 in cash and executed and delivered a promissory note to TWA in the same amount (the "Note"), as the agreed payment for the transfer of TWA's rights in the Air Florida Facility and the attached loading bridge.

■ With the exception of the Sublease, all of the closing documents and the Agreement clearly and unambiguously state that TWA was selling its rights in the Air Florida Facility and the attached loading bridge to Air Florida. Furthermore, the terms of the Sublease, and the testimony concerning the Sublease, are not necessarily inconsistent with a sale rather than lease transaction. The Sublease could be construed as merely a convenient means by which to require Air Florida to pay a proportionate share of the rent due the County under the Interim Lease and of the other expenses for the operation of the Concourse Addition, without granting Air Florida any rights other than those conveyed under the Agreement and Bill of Sale. Finally, and most importantly, the Sublease provides that in the event of any conflict between it and the Agreement, the terms of the Agreement control. Accordingly, for all the foregoing reasons, the Court finds that both Air Florida and TWA intended a sale, not a lease, of TWA's rights in the Air Florida Facility and the existing attached loading bridge to Air Florida. *See In re: Associated Air Services, Inc.*, 42 B.R. 768 (S.D.Fla.1984).

Having concluded that the parties intended a sale, the Court must determine whether TWA has a validly perfected security interest in Air Florida's rights in the Air Florida Facility and the two loading bridges now attached to it. It is undisputed that TWA never filed a financing statement with the Florida Department of State as required to perfect a security interest in

personal property such as equipment or general intangibles in Florida under Section 679.401(1)(c) Florida Statutes. However, TWA did record the Chattel Mortgage and Financing Statement in the public records of the County, which filing TWA asserts is sufficient to perfect a security interest in Air Florida's rights in the Air Florida Facility and the attached loading bridges as fixtures under Section 679.401(1)(b), Florida Statutes.

■ Florida law, however, clearly provides that a tenant's rights in a leasehold are personal property. *See Gould, Inc. v. Hydro-Ski International Corporation*, 287 So.2d 115, 116 (Fla. 4th DCA 1974). Accordingly, a security interest in a tenant's rights in a leasehold or in leasehold improvements, is a security interest in contract rights or general intangibles, which must be perfected by filing with the Florida Department of State under Section 679.401(1)(c) Florida Statutes. *See In the Matter of Associated Air Services, Inc., Associated Air Services, Inc. v. W.J.C., Inc.*, 42 B.R. 768, 772 (Bankr.S.D.Fla.); *In re Boogaart of Florida, Inc.*, 17 B.R. 480, 484–85 (Bankr.S.D.Fla.1981). Even if Air Florida's rights in the Air Florida Facility were a fixture, TWA's fixture filing is insufficient to perfect a security interest in fixtures under Section 679.402(5), Florida Statutes, because neither the Chattel Mortgage or Financing Statement contain the name of the record owner of the real property or a legal description of the property.

■ Likewise, the Court finds that the loading bridges involved in this dispute are equipment, not fixtures. The undisputed testimony established that the loading bridges were not permanently attached to the Concourse Addition, were never intended to be permanently attached, and could be removed without damaging the Concourse Addition. Accordingly the loading bridges are not fixtures under Florida law. *See Commercial Finance Co. v. Brooksville Hotel Co.*, 98 Fla. 410, 123 So. 814 (1929).

Since neither Air Florida's rights in the Air Florida Facility or the loading bridges

are fixtures under Florida law, and TWA did not file a financing statement with the Department of State, TWA failed to perfect its security interest under Section 679.-401(1)(c), Florida Statutes. Therefore, Air Florida is entitled to avoid TWA's security interest in Air Florida's rights in the Air Florida Facility and the loading bridges under 11 U.S.C. § 544.

Having determined that Air Florida may avoid TWA's lien, the Court must determine whether the two principal payments made by Air Florida on the Note within 90 days of the date Air Florida filed its petition for relief, may be avoided as preferential payments under 11 U.S.C. § 547. The Court finds that these two payments were in payment of an unsecured debt created in 1980. As such the payments were clearly on account of an antecedent debt. Air Florida is presumed to have been insolvent at the time of the payments under 11 U.S.C. § 547(f), and TWA offered no evidence to rebut the presumption. The undisputed testimony established that by reason of such payments, TWA has been preferred over unsecured creditors of Air Florida and has received more than TWA would have if such payments had not been made and TWA were treated as an unsecured creditor of Air Florida in a Chapter 7 proceeding. Accordingly, Air Florida may avoid and recover as preferences the two principal payments in the aggregate amount of $20,834.00 Air Florida made to TWA within 90 days of filing its petition for relief under Chapter 11.

Finally, the Court finds that Air Florida's rights in the Air Florida Facility can be partitioned and sold separately from the remainder of the Concourse Addition without prejudice to TWA. Such a sale would be identical to what TWA itself did when it sold its rights in the Air Florida Facility to Air Florida in 1980. Accordingly, Air Florida is entitled to sell its rights in the Air Florida Facility under 11 U.S.C. § 363(h) and Section 64.081 Florida Statutes.

The Court will enter a separate final judgment in accordance with these Findings of Fact and Conclusions of Law.