In re David L. PATTERSON and Thomas A. Patterson, d/b/a Patterson Brothers, Debtors.

Stephen G. BALSLEY, Trustee, Plaintiff,

v.

UNITED BANK OF OGLE COUNTY, N.A., Defendant.

Bankruptcy Nos. 84 B 20577, 84 B 20578.
Adv. No. 85 A 2041.

United States Bankruptcy Court, N.D. Illinois, W.D.

July 22, 1986.

Stephen G. Balsley, Rockford, Ill., Trustee.

Theodore Liebovich, Rockford, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This case comes before the Court on the Complaint of the Trustee to avoid a preferential payment from the Debtors to the United Bank of Ogle County (Bank). The Trustee, Attorney Stephen G. Balsley, is representing himself. The Bank is represented by Attorney Theodore Liebovich.

The following Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The facts as stipulated to by the parties are as follows: More than 90 days prior to filing for relief under Chapter 7 of the Code, each of the Debtors executed a security agreement with the Bank. The security agreements granted a security interest to the Bank in, among other things, the Debtors' accounts, contract rights and general intangibles. The security agreements were duly perfected in April of 1982.

In March of 1984, the Debtors entered into an Agreement for Deed with Mark

Bocker.[1] The Agreement provided that Mark Bocker would purchase 118 acres of land owned by the Debtors. The Agreement provided further that for the time between signing of the Agreement and closing Mr. Bocker would cash rent the land for $23,400. Payment of the $23,400 was to be made immediately, and upon closing, to be applied to the balance owed to the Debtors. No closing date was ever set or held.

Mr. Bocker paid the Debtors $23,400 to cash rent the land for the period of March 5, 1984, to March 1, 1985. The Debtors immediately remitted the $23,400 to the Bank to be applied to the balance on outstanding loans. The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on June 1, 1984. The present Complaint was filed pursuant to Section 547 of the Code.

Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of filing of the petition;

\*     \*     \*     \*     \*     \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. Section 547(b). The parties have stipulated that only Section 547(b)(5) is at issue.

The Bank argues as follows: The right to receive payments pursuant to the Agreement constitutes a general intangible of the Debtor; the Bank's perfected security agreement covers general intangibles; therefore the Bank has a security interest in the proceeds of the Agreement; because of the security interest in the proceeds of the Agreement, the Bank did not receive more as a result of the transfer than it would have in the Debtor's Chapter 7 case. The Trustee argues that the payment to the Bank resulted from rents and were not, therefore, covered by the Bank's security agreements.

The parties have stipulated to a set of facts. However, in order to reach a decision, the Court must also make certain assumptions. *Kapp v. U.S.*, 20 U.C.C. Rept.Serv. (CCH) 1355 (N.D.Ill.1976). The Debtors and Mark Bocker entered into an Agreement for Deed, but no closing was ever held. The Trustee offered to close the transaction with Mr. Bocker, but Mr. Bocker declined to do so. The property was subsequently sold at public auction. The Court assumes that since the Trustee did not bring an action for specific perform-

---

1. The Agreement provides as follows:
   "AGREEMENT FOR DEED

   Mark E. Bocker (Buyer) agrees to buy 78 acres from David L. Patterson (Seller) and Tom A. Patterson 40 acres (Seller) for the sum of $2,700.00/acre or the total sum of $210,600.00 for 78A more or less and the total sum of $108,000.00, for 40A more or less.

   Mark E. Bocker agrees to cash rent the 70A and 40A from David L. Patterson and Tom A. Patterson for the sum of $200.00/A or the total sum of $23,600.00 for 118A. One acre at this of $200.00/A shall be deducted from the total sum of $23,600.00 for the property used by the grains

   bins. $23,400.00 paid on March 5, 1984 to David L. Patterson and Tom A. Patterson $23,400.00 shall be applied to principal balance on the closing day of property mentioned above— less interest cost incurred by seller from March 1st, 1984 to day of closing. David L. Patterson (Seller) and Tom A. Patterson (Seller) agrees to cash rent 78A and 40A respectively from the date of March 5, 1984 to March 1, 1985.

   Seller David L. Patterson 3–5–84
   Signed
   Seller Tom A. Patterson
   Signed
   Buyer Mark Bocker Signed 3–5–84"

ance against Mr. Bocker, nor does the Bank claim that the Trustee should have, the Court shall assume that Mr. Bocker was within his rights not to close the transaction.

The Uniform Commercial Code, as adopted by Illinois, excludes "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder" from its coverage. Ill.Rev.Stat. Ch. 26, section 9–104(j) (1983). In contrast, the U.C.C. also provides that "[t]he application of this Article to a security interest in a security obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply." Ill.Rev.Stat. Ch. 26, Section 9–102(3). The Official Comments to the U.C.C. adopted by Illinois provide the following example:

> The owner of Blackacre borrows $10,-000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage.

Ill.Rev.Stat. Ch. 26, section 9–102 comment 4, (Smith-Hurd 1983).

Generally, the right to receive payments under a land sales contract has been held to be a general intangible. *In re Shuster*, 47 B.R. 920 (D.C.D.Minn.1985); *In re D.J. Maltese, Inc.*, 42 B.R. 509, 39 U.C.C.Rept. Serv. (CCH) 657 (Bankr.E.D.Mich.1984); *In re Himlie Properties, Inc.*, 36 B.R. 32 (Bankr.W.D.Wash.1983). However, the cases cited by the Bank can be distinguished from the case at bar. In all of the cases cited by the Bank, payments were being made on enforceable agreements for the sale of land. In the case at bar, no enforceable agreement for the sale of land was ever consummated. Instead, the Agreement contemplates that Mr. Bocker would rent the land until, if ever, the Agreement to sell the land was closed.

This case is controlled by *In re Standard Conveyor Co.*, 773 F.2d 198 (8th Cir.1985). In *In re Standard Conveyor*, the Debtor entered into a lease and purchase agreement with Berwald Investment Company. The agreement provided that Berwald was to deposit a certain sum into escrow. The escrow account was to serve as an advance rental and/or liquidated damages account.. Pursuant to the agreement, Berwald cancelled the agreement because it could not get adequate financing. A portion of the escrow account was distributed to the debtor as accrued rent. The remainder was distributed to Berwald as provided for by the cancellation provisions of the agreement. Barclays American/Business Credit, Inc., a secured creditor of the debtor having a security interest in the debtor's general intangibles, claimed a security interest in the entire escrow account. The court found that Berwald properly cancelled the agreement. By the terms of the agreement, that portion designated as accrued rents were in fact rents. The court further found that Article 9 of the Uniform Commercial Code specifically excluded accrued rents from coverage. Therefore, rents were not general intangibles within the meaning of the Uniform Commercial Code.[2]

The Agreement in the case at bar is inartfully drafted, at best. It is a handwritten document, signed by the parties. The Agreement does not describe the land, provide financing terms or set a closing date. The primary thrust of the Agreement sets forth the terms under which Mr. Bocker is to cash rent the farm. Specifically, the last sentence of the Agreement provides that the Debtors agree "to cash rent 78A and 40A respectively from the date of

**2.** The court in *In re Standard Conveyor* interpreted the U.C.C. as adopted in Minnesota. However, U.C.C. Section 9–104(j), as adopted by Minnesota, is the same as the version adopted by Illinois.

March 5, 1984, to March 1, 1985." Although the document is entitled Agreement for Deed, the Court concludes that it is, in fact, an agreement to cash rent Debtors' property from March 5, 1984, to March 1, 1985. The $23,400 received by the Debtors from Mr. Bocker were rents from the lease of real estate. Therefore, the Bank had no security interest in proceeds. Because the Bank had no security interest in the proceeds, it received more because of the transfer than it would in Debtors' Chapter 7 case. The Bank must turn over the funds to the Trustee.

IT IS SO ORDERED.