In re Michael KAVOLCHYCK and Jill Kavolchyck, Debtors.

Arthur S. WEITZNER, Trustee, Plaintiff,

v.

Aaron GOLDMAN and Arnold Goldman, Trustees; and Barnett Bank of South Florida, Defendants.

Bankruptcy No. 92–21031–BKC–AJC.
Adv. No. 92–1161–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

May 11, 1993.

---

**4.** These courts did not reach the question whether such trials would violate Article III or the

Seventh Amendment.

Robert Stok, Gest & Stok, N. Miami Beach, FL, for Goldman.

Arthur S. Weitzner, Weitzner & Co., Miami, FL, for trustee.

*MEMORANDUM DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT*

JACK B. SCHMETTERER, Bankruptcy Judge, Sitting by Designation and Assignment.

This matter comes before the Court on cross-motions for summary judgment filed by defendants Aaron and Arnold Goldman (the "Goldmans") and Barnett Bank of South Florida ("Barnett"), and by plaintiff Arthur Weitzner, who is the trustee for Debtors' Chapter 7 estate. For reasons stated below, the motion of the Goldmans is granted and that of Barnett is denied. Consistent with that result, the Trustee's motion is granted in part and denied in part. Judgment order in accord with this ruling is separately entered.

*Background Information*

Debtors Jill and Michael Kavolchyck filed a joint petition for relief pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, on April 2, 1992. On July 15, 1992, their case was converted to one under Chapter 7, and plaintiff Arthur Weitzner was appointed to serve as trustee for Debtors' estate.

On November 9, 1992, the Trustee filed this adversary complaint against Aaron and Arnold Goldman in their capacity as trustees for the Dan, Inc. Employee Pension Trust and against Barnett Bank of South Florida. The complaint alleges that both the Goldmans and Barnett have liens on Debtors' interest in real property located at 2525 Davie Boulevard in Davie, Florida (the "Davie property") that are voidable under 11 U.S.C. §§ 544 and 551. The Trustee requests "an Order declaring the validity, priority, and extent of the respective parties' interest in the subject property, and determination that the claims of the creditor Defendants are inferior to the TRUSTEE's interest." Trustee's Summary Judgment Motion. Both defendants deny that their liens are voidable, and each defendant asserts that its lien is senior to the other defendant's lien.

*Undisputed Facts*

Through a series of assignments and subleases executed in 1983 or 1984, Mr. Kavolchyck came to be both a lessee and a sublessor on a commercial lease to the Davie property.

On June 23, 1986, the Goldmans lent Mr. Kavolchyck $50,000. Trustee's Ex. 10a (promissory note signed by him). As security for this loan, Mr. and Mrs. Kavolchyck granted the Goldmans a mortgage in their "Lessee's interest" in the Davie property. Trustee's Ex. 7a. As further security, Mr. Kavolchyck executed a "Conditional Assignment of Rents, Profit, Income and Leases". Trustee's Ex. 7b. This document granted the Goldmans a security interest on Mr. Kavolchyck's "entire interest in and to all rents, income, receipts, and profits under all existing leases on the [Davie property] due or to become due ... including all ... subleases now existing...." *Id.* Thus, the Goldmans gained a security

interest in Mr. Kavolchyck's interest both as lessee and as sublessor of the Davie property.

Both the mortgage and the assignment were recorded in the Official Records Book of the Public Records of Broward County (where the property was located) on June 26, 1986. However, neither document was recorded with the Florida Department of State. Also, neither document purported to secure any future loans made by the Goldmans to Debtors.

By August 20, 1990, the outstanding balance on this loan was $12,357.35. On that date, the Goldmans lent an additional $37,-642.65 to both Mr. and Mrs. Kavolchyck. *See* Trustee's Ex. 7e (promissory note signed by them). This new loan was secured by a "Renewal of Conditional Assignment of Rents, Profits and Lease", Trustee's Ex. 7c, and a "Mortgage Modification Agreement". Trustee's Ex. 7d. These documents purported to extend and/or modify the security interests granted in 1986 to secure the additional loan made in 1986. Both documents were executed on August 20, 1990 and recorded in the Public Records of Broward County on July 17, 1991.

Meanwhile, on June 6, 1990, Barnett loaned $100,000 to Air Dynamics, Inc., a Florida corporation owned and/or controlled by Debtors. *See* Affidavit of Janette Davis in Support of Barnett's Motion, Ex. A (promissory note signed by Mr. Kavolchyck as president of Air Dynamics). Debtors signed a "Continuing and Unconditional Guaranty" to back this loan. Davis Aff., Ex.B. As security for this Guaranty, Debtors executed a Security Agreement granting Barnett a "first lien on, and first perfected security interest in" Debtor's lessee and sublessor interests in the Davie property. Davis Aff., Ex. C. Both the Guaranty and the Security Agreement were signed on June 6, 1990. Barnett then filed a standard form UCC–1 Financing Statement with both the Florida Department of State and the Official Records

Book of the Public Records of Broward County in June of 1990. Davis Aff., Ex. D.

The documents indicating the Goldmans' security interests in the lease and sublease were filed in the Public Records of Broward County when Barnett and Debtors executed the loan, guarantee, and accompanying security interests. Moreover, the loan application form indicates that Debtors owed $50,000 in "Accounts Payable". However, Debtors listed their interest in the Davie property as being unencumbered by any mortgages. Davis Aff., Ex. E.

### *Jurisdiction*

This matter is before the Court pursuant to 28 U.S.C. § 157 and the general order of reference issued by the United States District Court for the Southern District of Florida. Subject matter jurisdiction lies under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

### *Discussion*

The parties agree and this Court finds that there are no genuine issues of material fact present in this dispute. Therefore, summary judgment is an appropriate vehicle to dispose of the issues posed by the pleadings. Fed.R.Civ.P. 56 (Fed. R.Bankr.P. 7056).

The Trustee seeks to void one of the defendants' security interests under 11 U.S.C. § 544(a). Once voided, the Trustee would use 11 U.S.C. § 551 to preserve this unperfected interest for the benefit of the estate. Both Barnett and the Goldmans argue that only their security interest is properly perfected.

It is undisputed that the Goldmans recorded their security interests in the Public Records of Broward County in conformity with Fla.Stat. § 695.01 *et seq.* (the statute governing the recordation of liens on real estate), while Barnett filed its interest with the Florida Department of State in conformity with Fla.Stat. § 679.401, *et seq.* (Florida's enactment of § 9–401, *et seq.*, of the Uniform Commercial Code). The issue is this: Where must a party file a leasehold mortgage or an assignment of rents in order to create a perfected security interest

under Florida law? The answer to this question depends on whether Article 9 of the Florida version of the Uniform Commercial Code ("UCC") or Florida's statute providing for recordation of liens on real estate is applicable to the interest involved.

Florida's enactment of UCC § 9–104 provides in pertinent part that "[t]his chapter [Article 9 of the UCC] does not apply ... [e]xcept to the extent that provision is made for fixtures in [UCC § 9–313], to the creation or transfer of an interest in or lien on real estate, *including a lease or rents thereunder....*" Fla.Stat. § 679.104(10) (emphasis supplied). This section is direct and self-explanatory. It provides that Article 9 of the UCC does not cover the perfection of security interests in real property leases or the rents derived therefrom.

The only published Florida case to explicitly interpret this facet of § 679.104(10) is the recent opinion in *Aldana v. Colonial Palms Plaza, Ltd.,* 591 So.2d 953 (Fla. DCA1991). In that case, the tenant assigned its leasehold interest in real property to a third party as security for a loan. The assignee subsequently sued the landlord, who defended arguing that the assignment was void and unenforceable under Fla.Stat. § 679.318(4) (UCC § 9–318(4)). The appellate court relied on § 679.104(10) to hold that, "leases are excluded from the provisions of chapter 679 [Article 9 of the UCC] ... and therefore, subsection 679.-318(4) does not apply to this case." *Id.* at 954. *See also In re De Rochfort Co., Ltd.,* 22 B.R. 826, 828 (Bankr.S.D.Fla.1982) ("It would appear that Article 9 of the U.C.C. has no application to the transfer of a lease on real estate. § 679.104(10)").

■ Barnett and the Trustee argue that Article 9 of the UCC is applicable to liens on leasehold interests based on the 1973 opinion in *Gould v. Hydro–Ski International Corp.,* 287 So.2d 115 (Fla.DCA1973), and three bankruptcy cases following *Gould. See In re Air Florida System, Inc.,* 48 B.R. 437 (Bankr.S.D.Fla.1985); *Matter of Associated Air Services, Inc.,* 42 B.R. 768 (Bankr.S.D.Fla.1984); and *In re Boogaart of Florida, Inc.,* 17 B.R. 480

(Bankr.S.D.Fla.1981). This argument fails for several reasons.

### *Gould* does not support the position that UCC Article 9 applies to liens on leasehold interests.

In *Gould,* a lender received a security interest in all of the borrower's "contract rights". The lender later sued to foreclose on its security agreement, and in the midst of that proceeding, the borrower sought leave of the court to renegotiate a lease of real property. The lender objected to this motion, claiming that the borrower's leasehold was encumbered by its security agreement. The appellate court held, "[t]he provision of the security agreement is all inclusive and unequivocal. It granted to appellant as collateral security 'all of its contract rights'. Unquestionably, the lease in question is one of appellee's contract rights." *Id.* at 115.

This case did not discuss the application of § 679.104(10) to leasehold mortgages because that issue was not pertinent to the opinion. The only issue in that case was one of contractual interpretation, i.e. whether the term "contract rights" encompassed the borrower's rights under a lease agreement. The issue of perfection was not directly relevant since the dispute was only between lender and borrower, and did not involve competing lien claims on the lease.

The *Gould* court did make the following statement: "[lender] contends that a leasehold interest is personal property, *Thalheimer v. Tischler,* 55 Fla. 796, 46 So. 514 (1908) ... and that the security agreement encumbers the leasehold. We agree." *Id.* However, this language is *dicta* since it was not a ruling necessary to the holding in that case. The *Gould* court held that the language of the security agreement encompassed the borrower's lease. It did not directly address any other issue. *See Gould,* 287 So.2d at 116 ("the sole question ... presented for review here is whether or not the security agreement covered the leasehold interest"). A lease, by definition, is an agreement. So whether the borrower's lease was defined as real or personal

property could not have affected whether or not it was one of the borrower's "contract rights" for the purpose of the security agreement in question. Therefore, as *dicta* this language cannot serve as binding precedent in deciding the issue at hand. *See Great Lakes Dredge & Dock Co. v. Miller,* 957 F.2d 1575, 1578 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992) (discussing the non-binding nature of *dicta* ).

Furthermore, saying that "a leasehold interest is personal property" does not mean that a leasehold interest is not an interest in real estate. The case cited in *Gould* for the above proposition was the 1908 opinion in *Thalheimer v. Tischler* where the Florida Supreme Court stated,

at common law, a leasehold interest in lands, no matter for what term of years, was a chattel, and in the absence of a statute to the contrary may be levied upon and sold as personal property.... We have no statute in this state changing the common law rule in this respect....

46 So. at 518 (citations omitted). The *Gould* court did not rule that § 679.104(10) left intact the common law rule that leasehold interests must be conveyed like personal property. Without such a ruling, *Gould* could not impact this case.

■ Section 679.102(1), Fla.Stat. (UCC § 9–102(1)) provides, in relevant part, *"Except as otherwise provided in s. 679.104 on excluded transactions,* this chapter applies: (a) To any transaction ... which is intended to create a security interest in personal property ..."* (Emphasis added). This language is also direct and self-explanatory. It means that UCC Article 9 governs the granting and perfection of security interests in personal property except as provided in § 9–104. *See Official Comment to § 9–102* ("The main purpose of this Section is to bring all consensual interests in personal property and fixtures under this Article, except for certain types of transactions excluded by Section 9–104"). There can be no dispute that a leasehold interest in real property is an "interest in ... real estate" under § 679.104(10), be-

cause the lessee and lessor have possessory and/or title interests in land. Therefore, even if leasehold interests are defined as personal property, it is still an "interest in real estate" covered by § 679.104(10) and is thus excluded from coverage under the UCC Article 9 pursuant to § 679.102(1).

■ Another way of making this point is to say that Florida's enactment of UCC Article 9 (Fla.Stat. § 679.101 *et seq.*) governs the transfer of security interests in all personal property in Florida. § 679.102(1). Since § 679.104(10) specifically excludes security interests in leases from coverage under Article 9, this section altered the common law rule stated in *Thalheimer* concerning the conveyance of leasehold interests at least insofar as leasehold mortgages are concerned. Therefore, in keeping with the Florida Supreme Court's pronouncement in *Thalheimer,* even if a leasehold interest is personal property, a security interest in a leasehold need not be conveyed in the same manner as other personal property because § 679.104(10) altered the common law in this regard. The *Gould* court never confronted or determined the issue of whether § 679.104 altered common law concerning the conveyance of personal property. Therefore, the *dicta* in *Gould* is not dispositive of the issue before this Court.

## Bankruptcy Court Decisions Interpreting *Gould* Should not be Followed

■ Three opinions have been rendered by bankruptcy judges that specifically held that leasehold mortgages must be perfected under UCC Article 9, notwithstanding § 679.104(10). *In re Air Florida System, Inc.,* 48 B.R. 437, 439 (Bankr.S.D.Fla.1985); *Matter of Associated Air Services, Inc.,* 42 B.R. 768, 769–70 (Bankr.S.D.Fla.1984); *In re Boogaart of Florida, Inc.,* 17 B.R. 480, 484–85 (Bankr.S.D.Fla.1981). The basis for those rulings was the statement in *Gould* that leases are personal property. *See, e.g., Air Florida System,* 48 B.R. at 439:

Florida law ... clearly provides that a tenant's rights in a leasehold are personal property. *See Gould....* Accordingly, a security interest in a tenant's rights

in a leasehold ... is a security interest in contract rights or general intangibles, which must be perfected by filing ... under Section 679.401(1)(c) Florida Statutes.

Those decisions further cited *Gould* for the rule that a tenant's interest in a lease is a "contract right" which must be perfected under UCC § 9–401(1)(c). *See Air Florida, supra,* and *Boogaart of Florida,* 17 B.R. at 484–85:

> Under Florida law, a security interest in a debtor's "contract rights" attaches to its interest as a lessee in a leasehold. *Gould....* [Parties] argue in effect that *Gould* is erroneous, that is, that the Uniform Commercial Code excludes transactions which create a security interest in a leasehold, and cite in support § 679.-104(j).... While the Court appreciates that position, the Court cannot ignore a decision of a Florida appellate court which is squarely on point....

■ However, the opinions of fellow bankruptcy judges are not binding precedent. *See Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 & n. 7 (3rd Cir.1991); *United States v. Article of Drugs Consisting of 203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987) (both holding that no judge within a district court is bound by the decision of the other district judges).

■ The reasoning in these three bankruptcy cases is unpersuasive for several reasons. As discussed above, the *dicta* in *Gould* that a tenant's leasehold interest is personal property does not lead to the conclusion that § 9–104(10) does not apply to leasehold mortgages. Likewise, the holding in *Gould* that the term "contract rights" in the security agreement included the borrower rights under a lease agreement also fails to support the idea that UCC Article 9 applies to leasehold mortgages. An interest in real estate can certainly be obtained by contract. For example, when a person buys a home via an installment contract, that person has both an interest in the purchased real estate and a set of rights under the installment contract. So that person has both an "interest

in real estate" and a "contract right". Likewise, the lease in question gave Mr. Kavolchyck both rights under the lease agreement and a possessory interest in the leased premises. *See* Trustee's Ex. 1. Thus, the leasehold mortgages granted to the Goldmans and Barnett encumbered property that could be defined both as a "contract right" and an "interest in real estate".

■ There is absolutely nothing in Florida's enactment of UCC Article 9 to support the view that § 9–104(10) does not apply when an interest in real estate could also be defined as a contract right. Indeed, the inclusion of the phrase "including leases" following the words "interest in or lien on real estate" in § 9–104(10) make just the opposite point clear. Therefore, this Court respectfully disagrees with the opinions rendered in *Air Florida System, Associated Air Services,* and *Boogaart of Florida* as to the weight to be given the holding in *Gould* on the issue of § 679.104(10)'s effect on leasehold mortgages.

### *Gould* is not binding precedent even if it supported Barnett's position

### I. Legislation enacted subsequent to *Gould*

In 1989, the Florida Legislature passed the following act:

Be it Enacted by the Legislature of the State of Florida:

Section 1. Subsection (10) of section 679.104, Florida Statutes, is reenacted to read:

> 679.104 Transactions excluded from chapter.—This chapter does not apply:
>
> (10) Except to the extent that provision is made for fixtures in s. 679.313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder; or

Section 2. Subsection (1) of section 701.02, Florida Statutes, is amended to read:

> 701.02 Assignment not effectual against creditors unless recorded <u>and indicated in title of document.</u>—

(1) No assignment of a mortgage upon real property or of any interest therein, shall be good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the <u>assignment is contained in a document which, in its title, indicates an assignment of mortgage and is</u> ~~same be~~ recorded according to law.

1989 Fla.Laws ch. 89–41. This legislation was enacted along with a preamble which made clear that the Florida legislature disagreed with the bankruptcy decisions and their view of *Gould:*

WHEREAS, The Uniform Commercial Code–Secured Transactions, in section 679.102(1), Florida Statutes, provides that "[e]xcept as otherwise provided in s. 679.104 on excluded transactions, this chapter applies to any transaction (regardless of its form) which is intended to create a security interest in personal property ...," and

WHEREAS, the Uniform Commercial Code–Secured Transactions, in section 679.104(10), Florida Statutes, excludes from the application of the Uniform Commercial Code "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder," and

WHEREAS, in 1973, the Fourth District Court of Appeal of Florida in Gould v. Hydro–Ski International Corporation, 287 So.2d 115, held that a "leasehold interest is personal property ...," and

WHEREAS, the bankruptcy cases of In re Air Florida System, Inc., 48 B.R. 437 (Bkrtcy.1985), and In re Boogaart of Florida, Inc., 17 B.R. 480 (Bkrtcy.1981), have relied upon the Gould decision in interpreting Florida law as including within the Uniform Commercial Code–Secured Transactions provisions, business transactions created a security interest in a leasehold estate in land, and

WHEREAS, one of the primary objectives of the Uniform Commercial Code–Secured Transactions is to achieve a unified coverage of the subject matter and to make uniform the law among the various jurisdictions without unnecessary local peculiarities, and

WHEREAS, the Uniform Commercial Code–Secured Transactions, as adopted by the Florida Legislature and as interpreted by other jurisdictions, excludes from the provisions of the Uniform Commercial Code–Secured Transactions those transactions creating a security interest in a leasehold estate in land, and

WHEREAS, it is the intent of the Legislature that section 679.104(10), Florida Statutes, be literally construed, and that the clear language of the Uniform Commercial Code–Secured Transactions should be followed, to exclude the creation of leasehold interests in land and the encumbrancing and transferring of such interests from the provisions of the Uniform Commercial Code–Secured Transactions, and

WHEREAS, it is the intent of the Legislature that, for the purposes of chapter 679, Florida Statutes, a leasehold interest in land be construed and treated as a real estate interest and that the creation, encumbrance, and transferring of such interests be excluded from the provisions of the Uniform Commercial Code–Secured Transactions....

Fla.Laws ch. 89–41.

■ The foregoing preamble certainly made a clear legislative statement as to the intent behind § 679.104(10). The parties here devoted a considerable part of their briefs to the legal effect of that preamble. Barnett correctly argues that "the preamble is not part of the act, and cannot enlarge or confer powers nor control the words of the act, unless they are doubtful or ambiguous." *Dorsey v. State,* 402 So.2d 1178, 1181 (Fla.1981), *quoting Valley R.R. Co. v. Thomas,* 132 U.S. 174, 188, 10 S.Ct. 68, 73, 33 L.Ed. 302 (1889). Thus, the Florida Legislature could not overrule established case law concerning a statute merely by passing a preamble without any corresponding change in the wording of the statute.

However, Section 2 of Fla.Law ch. 89–41 did change the wording of § 701.02(1), Fla. Stat. so as to require that assignments of mortgages be recorded via a document

which contains the assignment as well as containing a title indicating that is an assignment of a mortgage. There is nothing in this section that excludes leasehold mortgages from its coverage. *See* Fla.Stat. § 697.01 (defining mortgages). Documents such as those referred to in § 701.02(1) are recorded in the public records of the applicable county pursuant to Fla.Stat. § 695.01. By contrast, under Article 9 of the UCC, the actual security agreements are not filed; rather the parties file a financing statement pursuant to § 9–302(1). *See* § 679.302(1), Fla.Stat. ("A financing statement must be filed to perfect all security interests …"), and § 679.402 (UCC § 9–402) (listing the formal requisites for a UCC financing statement). Since the actual document assigning a leasehold mortgage must be filed pursuant to §§ 701.02 and 695.01, and since the actual document creating a security interest under UCC Article 9 is not filed, this amendment to § 701.02(1) made clear that leasehold mortgages cannot be covered under the Florida UCC. A contrary interpretation of this legislation would violate Florida rules of statutory interpretation by rendering this new language meaningless. *See Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So.2d 452 (Fla.1992) ("it is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless"). Therefore, by combining the reenactment of § 679.104(10) together with the amendment of § 701.02, the Florida Legislature clarified Florida law concerning the UCC's coverage of leasehold mortgages.

 This interpretation is clearly supported by the preamble to Fla.Law ch. 89–41. While preambles to legislation are not controlling authority, they do provide strong evidence of the legislative intent on disputed issues of statutory interpretation. *See, e.g., United Teachers of Dade, FEA/United, AFT, Local 1974, AFL–CIO v. Dade County School Board*, 500 So.2d 508 (Fla.1986); *Dinsmore v. Martin Blumenthal & Associates, Inc.*, 314 So.2d 561 (Fla.1975) (where the Florida Supreme Court examined preambles to determine the legislative intent behind a statute).

The preamble to Fla.Law ch. 89–41 clearly and explicitly demonstrates the Florida Legislature's awareness that bankruptcy court decisions such as *Boogaart* and *Air Florida* had interpreted *Gould* in a manner that was contrary to the plain language of the UCC. It further demonstrates the Legislature's intent to have courts interpreting Florida's enactment of the UCC find that § 679.104(10) excludes leasehold mortgages from coverage under Florida UCC Article 9. Thus, even if the two sections of Fla. Law in ch. 89–41 were found to be vague and inconclusive, the preamble can be seen as a guide to legislative intent.

## II. Conflict between *Gould* and *Aldana v. Colonial Palms Plaza*

The 1973 decision in *Gould* and the bankruptcy court decisions following *Gould* are contradicted by recent authority in *Aldana v. Colonial Palms Plaza*, 591 So.2d 953 (Fla.DCA1991). *Aldana* is more persuasive for several reasons. First, *Aldana* directly holds that "leases are excluded from the provisions of chapter 679 [Article 9 of the UCC]," 591 So.2d at 954, whereas the opposite position must be inferred from *Gould*, and, as discussed above, that inference is highly problematic. Second, *Aldana* was decided after enactment of Fla.Law ch. 89–41. To this end, it is supported by the legislative history of § 679.104(10) as laid out in the preamble to ch. 89–41.

Furthermore, when interpreting this section, the Court must follow the Florida legislature's mandate on interpretation of its UCC provisions:

(1) This Code shall be liberally construed and applied to promote its underlying purposes and policies.

(2) Underlying purposes and policies of this Code are

(a) to simplify, clarify and modernize the law governing commercial transactions;

 . . . . .

(c) to make uniform the law among the various jurisdictions ....

Fla.Stat. 671.102 (UCC § 1–102). The Florida Supreme Court has frequently inter-

preted UCC provisions in light of § 1–102(2)(c) so that Florida law would be consistent with that of other jurisdictions throughout the country. *See, e.g., Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.*, 540 So.2d 113, 117 (Fla. 1989), and *ITT Industrial Credit Co. v. Regan*, 487 So.2d 1047, 1050 (Fla.1986). The *Aldana* court's interpretation of § 679.104(10) should therefore be adopted because it is consistent with uniform interpretation of UCC § 9–104 that courts in other jurisdictions have adopted. *See In re Bristol Associates, Inc.*, 505 F.2d 1056, 1061 (3d Cir.1974) (and authorities cited therein) ("that lenders need not conform to the requirements of Article 9 in order to retain their security interest in a real estate lease assigned to them as collateral, is supported, apparently unanimously, by authorities who have considered the problem"). *See also In re Standard Conveyor Co.*, 773 F.2d 198 (8th Cir.1985); *In re Maryville S & L Corp.*, 743 F.2d 413 (6th Cir.1984); *In re Taslis*, 41 B.R. 47 (Bankr. D.Mass.1984); *In re Le Sueur's Fiesta Store, Inc.*, 40 B.R. 160 (Bankr.D.Ariz. 1984); *Colorado National Bank—Longmont v. Fegan*, 16 Kans.App.2d 662, 827 P.2d 796 (1992); *IAMA Corp. v. Wham*, 99 Nev. 730, 669 P.2d 1076 (1983); *Citizens Bank & Trust Co. v. Wy–Tex Livestock Company, Inc.*, 611 S.W.2d 168 (Tex.Civ. App.1981); *Hilst v. Bennett*, 175 Colo. 78, 485 P.2d 880 (1971) (all finding that UCC Article 9 is inapplicable to security interests in leaseholds pursuant to § 9–104).

Finally, courts both in and out of Florida have interpreted § 9–104(10) as excluding Article 9 coverage of security interests in rents derived from a lease. *In re Mears*, 88 B.R. 419 (Bankr.S.D.Fla.1988) (interpreting Fla.Stat. § 679.104(10)); *Standard Conveyor Co.*, 773 F.2d at 204; *In re Patterson*, 64 B.R. 189 (Bankr.N.D.Ill.1986); *In re Cook*, 63 B.R. 789 (Bankr.D.N.D. 1986); *Metropolitan Life Ins. Co. v. Reeves Gustafson*, 228 Neb. 233, 422 N.W.2d 72 (1988). Since the language of § 9–104(10) applies with equal force to both leases and rents derived from leases, *see* § 679.104(10) ("including leases or rents thereunder"), an interpretation that includ-

ed leases under UCC Article 9 but excluded rents derived thereunder would leave § 679.104(10) internally inconsistent.

For all these reasons, the interpretation of § 679.104(10) adopted by *Aldana* and numerous other courts across the country is correct. It is this Court's obligation to apply what is understood to be the view of Florida law that the Supreme Court of that State would likely adopt if called upon to interpret that statute. *Aldana* states that view.

### CONCLUSION

Having decided that security interests in leaseholds are excluded from coverage under the Florida UCC, these conclusions follow:

■ (1) The Goldmans have a perfected security interest in Debtors' leasehold estate as well as their interest in rents derived from their sublease of the property.

■ (2) Barnett failed to comply with § 695.01, Fla.Stat., when it attempted to perfect its security interest. Therefore, it does not have a perfected security interest in either Debtors' leasehold estate or their interest in rents derived from their sublease.

(3) Due to the above conclusions, the Court need not discuss the Goldmans' argument that they are entitled to a first priority security interest as a matter of equity.

■ (4) Since Barnett's security interest is unperfected, it is voidable by the Trustee under 11 U.S.C. § 544.

Accordingly, Barnett's motion for summary judgment is denied, the Goldman's motion is granted, and the Trustee's motion is granted in part and denied in part. Judgment order is separately entered granting relief consistent with this Memorandum Decision.