In re Michael KAVOLCHYCK and Jill Kavolchyck, Debtors.

BARNETT BANK OF SOUTH FLORIDA, N.A., Appellant,

v.

Arthur S. WEITZNER, Trustee, Aaron Goldman and Arnold Goldman, Trustees, Appellees.

Nos. 93–1154–CIV, 92–21031–BKC–AJC and 92–1161–BKS–AJC–A.

United States District Court, S.D. Florida.

Feb. 25, 1994.

Sheldon Rosenberg, Rosenberg & Rothman, P.A., Miami, FL, for Barnett Bank of South Florida, N.A.

Charles W. Throckmorton, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, FL, for appellee Arthur S. Weitzner, Trustee.

Robert A. Stok, Gest & Stok, P.A., Miami, FL, for appellees Aaron Goldman and Arnold Goldman.

### ORDER AFFIRMING FINAL JUDGMENT OF BANKRUPTCY COURT AND REMANDING ISSUE OF ATTORNEYS' FEES

ARONOVITZ, District Judge.

This is an appeal by Barnett Bank of South Florida, N.A. ("Barnett Bank") from a Final Judgment entered on May 11, 1993 by visiting Judge Jack B. Schmetterer, sitting by designation in the United States Bankruptcy Court for the Southern District of Florida, 154 B.R. 793. The Court has considered the briefs on appeal, oral argument of counsel, the decision of the lower court, the record on appeal and the applicable law, and is otherwise fully advised in the premises. For the following reasons, this Court AFFIRMS the decision of the Bankruptcy Court in its entirety and REMANDS the issue of attorneys' fees for an evidentiary hearing and ruling thereon.

### Factual and Procedural Background

The underlying adversary proceeding in bankruptcy was initiated by Arthur Weitzner, the Trustee in bankruptcy (the "Trustee"), against two creditors of the estate, Appellant Barnett Bank and Appellees Aaron Goldman and Arnold Goldman, as Trustees

of Dan, Inc. Employees Profits Sharing Trust (the "Goldmans"). Both the Goldmans and Barnett Bank claimed to have superior liens on the Debtors' leasehold interest in real property located at 2525 Davie Boulevard in Davie, Florida (the "Davie Property" or the "Property"). The Trustee sought a determination of the validity, priority and extent of the creditors' interest in the Property and a determination that the claims of the creditors were inferior to the Trustee's interest. The relevant facts of this case are undisputed.

The Debtors are Michael Kavolchyck and his wife Jill Kavolchyck. In June of 1986, the Goldmans lent Mr. Kavolchyck $50,-000.00, secured by a mortgage in the Debtors' "Lessee's interest" in the Davie Property. As further security, Mr. Kavolchyck executed a "Conditional Assignment of Rents, Profit, Income and Leases," granting the Goldmans a security interest on the Debtors' "entire interest in and to all rents, income, receipts, and profits under all existing leases on the [Davie Property] due or to become due ... including all ... subleases now existing ..." Thus, the Goldmans gained a security interest in the Debtors' interest both as lessee and sublessor of the Davie Property.

Both the mortgage and the assignment were recorded in the Official Records Book of the Public Records of Broward County on June 26, 1986. Neither document was filed with the Florida Department of State under the Florida Uniform Commercial Code. In addition, neither document purported to secure any future loans made by the Goldmans to the Debtors.

Four years later on June 6, 1990, Barnett Bank loaned $100,000.00 to Air Dynamics, Inc., a Florida corporation owned and/or controlled by the Debtors. As part of the security for this loan, the Debtors executed a "Pledge and Security Agreement," granting Barnett Bank a "first lien on, and perfected security interest in" the same interest already encumbered by the Goldmans' mortgage and assignment. On June 14, 1990, Barnett Bank filed a UCC-1 financing statement with both the Florida Department of State under the Florida Uniform Commercial Code and the Public Records Office of Broward County.

By August 20, 1990, the outstanding balance on the loan made by the Goldmans to the Debtors was $12,357.35. On that date, the Goldmans made another loan to the Debtors for $37,642.65, evidenced by a new promissory note in the amount of $50,000.00. This loan was secured by a "Renewal of Conditional Assignment of Rents, Profits and Lease" and a "Mortgage Modification Agreement." These documents purported to extend and/or modify the security interests granted in 1986 to secure the additional loan made in 1990. Both documents were recorded in the Public Records Office of Broward County.

On April 2, 1992, the Debtors filed a joint petition for relief pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.* Their case thereafter was converted to a Chapter 7 case. Barnett Bank and the Goldmans asserted their respective liens on the Debtors' leasehold interest in the bankruptcy proceeding below, each claiming that its lien was superior to the other.

In a 19–page Memorandum Decision on Cross–Motions for Summary Judgment, the lower court ruled that (1) the Goldmans have a perfected security interest in the Debtors' leasehold estate as well as in the rents derived from the subleases; (2) Barnett Bank does not have a perfected security interest in the Davie Property because it failed to comply with Fla.Stat. § 695.01 in attempting to perfect its interest; (3) the Goldmans' perfected security interest is superior in priority to the interest of either Barnett Bank or the Trustee; and (4) since Barnett Bank's security interest is unperfected, it is voidable by the Trustee under 11 U.S.C. § 544. A Final Judgment was entered on May 11, 1993 in accordance with these conclusions. This appeal followed.

## Discussion

The Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a) (West 1993). The primary issue on appeal is who has a superior security interest in the Debtors' leasehold estate and rents derived from the subleases, Barnett Bank, the Goldmans or the Trustee.

### A. PROPER METHOD OF PERFECTING A SECURITY INTEREST IN A LEASEHOLD ESTATE AND RENTS DERIVED FROM SUBLEASES

■ The dominant issue presented herein is what was the proper method to perfect a security interest in a leasehold estate and rents thereunder in 1986. The Goldmans contend that perfection is achieved by recordation in the local county offices under Florida recording statutes, Fla.Stat. §§ 695.01 and 701.02. Barnett Bank, on the other hand, maintains that perfection is accomplished through the filing of a UCC–1 financing statement in accordance with Article 9 Secured Transaction provisions of the Uniform Commercial Code ("UCC"), as adopted by Florida. *See* Fla.Stat. § 679.401, *et seq.* (West Supp.1993).

■ The issue presented is a pure conclusion of law and therefore, subject to a *de novo* standard of review. *See In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990); *In re Sublett*, 895 F.2d 1381 (11th Cir.1990). Under this standard of review, the Court agrees with the lower court that a security interest in a leasehold estate and rents thereunder is excluded from the provisions of the UCC and that the proper method of perfecting such an interest in 1986 was by recordation. The Goldmans therefore properly perfected their security interest and said interest is superior in priority to Barnett Bank's interest.

Barnett Bank's claim that its security interests in the Debtors' leasehold estate and rents thereunder fall under the UCC is in direct contravention of the express language of the UCC itself. The UCC provides, in relevant part, that:

(1) *Except as otherwise provided in § 679.104 on excluded transactions,* this chapter applies:

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property . . .

*See* Fla.Stat. § 679.102(1)(a) (emphasis added). This section clearly states that UCC Article 9 governs the granting and perfection of security interests in personal property *except* as provided in § 679.104. Section 679.-104, entitled "Transactions excluded from chapter," provides in pertinent part, that:

This chapter does *not* apply:

\*　　\*　　\*　　\*　　\*　　\*

(10) Except to the extent that provision is made for fixtures in § 679.313, to the creation or transfer of an interest in or lien on real estate, *including a lease or rents thereunder;* or

*See* Fla.Stat. § 679.104(10) (emphasis added). Thus, specifically excepted from UCC provisions are liens on real estate, including "a lease or rents thereunder." The Goldmans' interest in the Debtors' leasehold estate and rents, therefore, was exempted from the filing requirements of the UCC under Fla.Stat. § 679.104(10).

Florida caselaw supports this conclusion. *See, e.g., Aldana v. Colonial Palms Plaza, Ltd.*, 591 So.2d 953, 955 (Fla. 3d DCA 1991) (citing to § 679.104(10), the court stated that the "Landlord correctly points out that leases are excluded from the provisions of chapter 679"); *Rucker v. State Exchange Bank*, 355 So.2d 171, 174 (Fla. 1st DCA 1978) ("the assignment of a real estate mortgage securing a promissory note as collateral for a bank loan is not a secured transaction under Article 9 of the Uniform Commercial Code because it is specifically excluded by Section 679.104(10)"); *In re De Rochfort Co.*, 22 B.R. 826, 828 (Bankr.S.D.Fla.1982) ("it would appear that Article 9 of the UCC has no application to the transfer of a lease on real estate. § 679.104(10)").

Barnett Bank relies on *Gould, Inc. v. Hydro–Ski Int'l Corp.*, 287 So.2d 115 (Fla. 4th DCA 1973), to support its contention that a security interest in a leasehold interest is personal property that is perfected through the filing requirements of the UCC, Fla.Stat. § 679.401. *Gould* involved a security agreement that encumbered, among other things, all of the debtor's contract rights. The "sole question" presented in *Gould* was "whether or not the security agreement covered the leasehold interest." *Gould*, 287 So.2d at 116. The court answered in the affirmative, ruling that a leasehold interest is personal property

and is covered by the security agreement as one of the debtor's contract rights. *Id.*

Three subsequent cases relied on *Gould*'s holding that a tenant's rights in a leasehold are personal property in ruling that a security interest in a leasehold estate is a security interest in contract rights or general intangibles, which must be perfected under the UCC, Fla.Stat. § 679.401. *See In re Air Florida System, Inc.,* 48 B.R. 437 (Bankr. S.D.Fla.1985); *In the Matter of Associated Air Services, Inc.,* 42 B.R. 768 (Bankr. S.D.Fla.1984); *In re Boogaart of Florida, Inc.,* 17 B.R. 480 (Bankr.S.D.Fla.1981). Based on *Gould* and the these bankruptcy cases, Barnett Bank argues that it's security interest was duly perfected under the UCC.

The lower court addressed *Gould* and its progeny in detail and determined that Barnett Bank's argument predicated thereon must fail for several reasons. It concluded that *Gould* does not support the position that UCC Article 9 applies to liens on leasehold interests because that case did not address the applicability of § 679.104(10); that the bankruptcy court decisions interpreting *Gould* should not be followed; and that *Gould* is not binding precedent even if it did support Barnett Bank's position because the Florida Legislature, in reenacting § 679.-104(10) in 1989, specifically noted in the preamble to Fla. Law ch. 89–41 the holdings in *Gould, Air Florida System* and *Boogaart, supra,* and declared therein its express intent that for purposes of chapter 679, Florida Statutes:

> a leasehold interest in land be construed and treated as a real estate interest and that the creation, encumbrance, and transferring of such interests be excluded from

the provisions of the Uniform Commercial Code–Secured Transactions …

Fla. Laws ch. 89–41. *See* Memorandum Decision on Cross–Motions for Summary Judgment at 7–16.

This Court has conducted a *de novo* review of *Gould* and its progeny, the express provisions of the UCC referred to herein and the preamble to Fla. Law ch. 89–41, and finds that the lower court's conclusions regarding the legal effect of *Gould* on this case are not erroneous. Specifically, the Court finds that *Gould* does not address the application of § 679.104(10) to leasehold mortgages and simply does not speak directly to the issue at bar.[1] Moreover, the preamble to Fla. Law ch. 89–41 makes crystal clear the Florida Legislature's intent that the UCC does not apply to a security interest in leasehold estates and that *Gould* and its progeny do not state correctly the law on this matter.[2]

Based on the foregoing, this Court finds that the lower court correctly ruled that perfection of a security interest in leasehold estates and rents derived from subleases are outside the purview of the Secured Transaction provisions of the UCC as adopted by Florida. The Court affirms the lower court's holding that the Goldmans properly perfected their security interest in the Debtors' leasehold interests in 1986 by recording pursuant to Fla.Stat. §§ 697.01 and 701.02, and that Barnett Bank, by filing under the UCC, did not properly perfect its interest.

■ Barnett Bank, however, has a second arrow in its bow. It argues that even if the Goldmans' security interest was properly perfected in the first instance in 1986, Barnett Bank still has a superior security interest. Barnett Bank's argument is as follows:

---

1. As previously noted herein, the "sole question" presented in *Gould* was "whether or not the security agreement covered the leasehold interest." *Gould,* 287 So.2d at 116. Unlike this action, *Gould* did not involve creditors with competing security interests nor did it address in any fashion the issue of perfection.

2. Barnett Bank's argument that the Court should not consider the preamble to Chapter 89–41 because it was not formally enacted as law is unpersuasive. Although Barnett Bank is correct that the legislative intent as expressed in the preamble was not formally enacted as law, the

preamble is directly relevant to the issue on appeal and therefore, can and should be considered by the Court. *See United Teachers of Dade, FEA/United, AFT, Local 1974, AFL–CIO v. Dade County School Board,* 500 So.2d 508 (Fla.1986) and *Dinsmore v. Martin Blumenthal & Associates, Inc.,* 314 So.2d 561 (Fla.1975) (where the Florida Supreme Court examined preambles to determine the legislative intent behind a statute).

The Court further notes that Chapter 89–41 became effective on October 1, 1989, nine months before Barnett Bank attempted to perfect its interest under the UCC.

the Goldmans' second loan made in 1990 was a new, separate loan. It also was unsecured since no new mortgage was executed in connection therewith. A portion of the proceeds of the 1990 loan allegedly was used to pay off the balance of the 1986 loan and therefore, any perfection enjoyed by the Goldmans' 1986 loan ended when that loan was satisfied and extinguished by the 1990 loan. Because Barnett Bank's loan was secured, and the Goldmans' 1990 loan unsecured, Barnett Bank claims that its interest is superior in priority to the Goldmans' interest.[3]

Based upon a review of the record and the facts of this case, the Court concludes that Barnett Bank's second argument also must fail. The Mortgage Modification Agreement, executed in connection with the 1990 loan, clearly shows that the Goldmans' 1990 loan not a new separate loan as Barnett Bank argues, but rather, was a modification and/or extension of the 1986 loan. The Mortgage Modification Agreement plainly states that it "is made for the purpose of extending and modifying the amount of the Mortgage." It also provides that "[e]xcept as expressly modified herein, those [original] documents continue to be true and binding documents . . ." and that the original documents recorded in the county office "are hereby republished and deemed to be in full force and effect," except as expressly modified by the agreement.

Thus, it appears that the Goldmans and the Debtors extended, by the execution and recordation of the Mortgage Modification Agreement and the Renewals of Conditional Assignment of Rents, Profits and Leases, the security of the Mortgage relating to the 1986 loan to cover the second loan in 1990. *See Durrance v. First Nat'l Bank & Trust Co. of Orlando*, 116 Fla. 526, 156 So. 526, 527 (1934); 37 Fla. Jur.2d, *Mortgages*, § 40 (parties to a mortgage may, by a written agreement, extend the security of the mortgage to cover an additional indebtedness).

The Goldmans' 1990 loan therefore was secured and duly perfected by recordation. Accordingly, the Goldmans' perfected security interest in the Debtors' leasehold estate as well as in the rents derived from the subleases is superior in priority to Barnett Bank's unperfected interest.

## B. AVOIDANCE OF AN UNPERFECTED LIEN UNDER 11 U.S.C. § 544

The court below ruled that because Barnett Bank's interest in the Debtors' leasehold estate was unperfected, it is voidable by the Trustee under 11 U.S.C. § 544. The lower court's ruling on this issue is unchallenged and is entirely correct. *See* 11 U.S.C. § 544 (West 1993).

On appeal, the Trustee apparently seeks a declaration from this Court that Barnett Bank's voided lien is preserved for the benefit of the estate under 11 U.S.C. § 551. He also joins in Barnett Bank's argument that any perfection enjoyed by the Goldmans was extinguished by the Goldmans' 1990 loan. The Trustee then claims that because he succeeds to Barnett Bank's interest under § 551, and since the Goldmans no longer have a perfected security interest by virtue of the 1990 loan, the Trustee has superior interest in the Debtors' leasehold estate and rents over both the Goldmans and Barnett Bank. The Court does not agree completely with the Trustee's position.

The Trustee correctly argues that Barnett Bank's avoided lien is preserved for the benefit of the estate under § 551.[4] A declaration to that effect theoretically is not necessary because such preservation is automatic.[5] In other words, preservation under

---

3. It appears from the record that the lower court made no express determinations with respect to this particular argument.

4. Section 551 provides that:
   Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

11 U.S.C. § 551 (West 1993).

5. The title of section 551 is *"Automatic* preservation of avoided transfer." 11 U.S.C. § 551 (emphasis added). The legislative history also states that "[t]he operation of the section is automatic." S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, at pp. 5787–88, 5877.

§ 551 is an automatic consequence of avoidance of a lien under § 544.[6]

That Barnett Bank's interest is preserved for the benefit of the estate does not advance the Trustee's position since the Court has found that the Goldmans' lien on the Debtors' leasehold estate and rents remained perfected in 1990 and that Barnett Bank's lien is unperfected. It is clear that the Trustee "in avoiding a creditor's security interest, steps only into the creditor's shoes and only obtains those rights which the creditor retains." *In re McCorhill Pub., Inc.*, 86 B.R. 783, 795 (Bankr.S.D.N.Y.1988).[7] Thus, simply because Barnett Bank's lien has been preserved for the estate does not enhance the status of that lien; it is still an unperfected lien. An unperfected lien—be it in the hands of Barnett Bank or the Trustee—cannot defeat the perfected lien held by the Goldmans.

The Trustee's reliance on *In re Van De Kamps Dutch Bakeries*, 908 F.2d 517 (9th Cir.1990), and *In re Barry*, 31 B.R. 683 (Bankr.S.D.Ohio 1983), is misplaced. Both cases involved fraudulent transfers that were avoided and then preserved by the trustee in bankruptcy. The distinguishing factor in those cases is that the liens were properly perfected in the first instance prior to being avoided. In this case, Barnett Bank's lien was never perfected in the first instance.

The Court therefore affirms the lower court's ruling that the Goldmans's security interest is superior in priority to either Barnett Bank's or the Trustee's interest.

### Conclusion

For the reasons stated herein, the Court hereby AFFIRMS the lower court's Final Judgment entered on May 11, 1993. It REMANDS the Goldmans' Motion to Assess Fees and Costs Pursuant to Bankruptcy Rules 8011 and 8014, file dated October 1, 1993, to the lower court for an evidentiary hearing and a ruling thereon.[8]

DONE AND ORDERED.

---

6. That preservation for the benefit of the estate under § 551 is automatic also defeats the Goldmans' argument that the preservation issue was not properly before the Court because the Trustee had not filed a cross-appeal raising the issue. On October 27, 1993, the Court entered an Order, holding that a cross-appeal was not necessary. Following oral argument on the merits of the appeal on November 12, 1993, the Goldmans submitted a supplemental brief that raised again the question of the necessity of a cross-appeal.

The Court again reiterates that no cross-appeal by the Trustee was necessary. The issue of preservation under § 551 is not a new issue. Given the automatic operation of § 551, the issue is sufficiently related to the issue of whether Barnett Bank's lien was properly avoided under § 544 which was properly preserved for appeal by Barnett Bank. The Goldmans' claims of prejudice resulting from the lack of a cross-appeal are without merit. Accordingly, the Court hereby reaffirms it October 27, 1993 Order, finding that no cross-appeal by the Trustee was necessary in this case.

7. *See also, In re Kors, Inc.*, 819 F.2d 19, 23 (2d Cir.1987) (under § 551, Trustee may "preserve only those rights which existed against the bankrupt"); *In re Appalachian Energy Industries, Inc.*, 25 B.R. 515, 517 (Bankr.N.D.Tenn.1982) ("Section 551 cannot be utilized by the trustee to cure defective liens to the detriment of other properly perfected secured creditors"); *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748, 750 (W.D.N.Y.1986) ("preservation alone does not enhance the status of the trustee's lien so that if [the avoided liens] would have been defeated by the junior claimants while in the hands of the lienholders, they are also vulnerable in trustees").

8. The Goldmans' request for an award of attorneys' fees and costs against the Trustee as sanctions for the Trustee's "frivolous appeal," raised in their Supplemental Reply Brief, is without merit and is hereby DENIED.